BAILEY & GALLUP v. JOHN LARCHAR.

If a guarantor, by the use of ambiguous language in his guaranty, renders it susceptible of two or more equally reasonable interpretations, that is to be adopted which makes most strongly against him; but what is the most reasonable interpretation of a guaranty is to be deduced, considering its subject, the relative condition of the parties, and their probable intent, from the language employed in it.

Where a small calico printer, in embarrassed circumstances, had contracted to work out a debt by printing, under a contract which bound his creditor to furnish him with nothing to enable him to fulfil his contract but the gray cloths to be printed, and the father of the calico printer guaranteed his son's "return and delivery of any and all *printing cloths* the said B. & G. (the creditors) may hereafter deliver to him to be printed," under a certain contract identified by date and subject: *Held*, that the subject of the guaranty was the return and delivery of the gray cloths only; that damages could not be recovered upon the guaranty, because goods returned printed were not printed in a workmanlike manner, and were to be confined, as to goods not returned, to the cost of the gray goods, with interest thereon after a reasonable time for their return printed.

ASSUMPSIT upon a guaranty, given to assure the return of certain cotton cloth delivered to be printed. At the trial of the case, at the present term, under the general issue, before the chief justice, sitting with a jury, it appeared, that William Larchar, a small calico printer in embarrassed circumstances, being indebted to the plaintiffs, entered into the following written contract with them, in the hope of paying his indebtment in his work as a calico printer :—

"PROVIDENCE, September 4, 1856.

"This agreement, made and entered into this day by and between William Larchar and Bailey & Gallup, is as follows : Said Larchar hereby agrees to receive from Bailey & Gallup brown printing cloths to print and return to them within forty days from the date of said Larchar's receipt for the same, not exceeding two thousand pieces at any one time ; to print said goods of such styles of fancy or blue prints as said Bailey & Gallup may approve, and in a workmanlike manner, satisfactory to said Bailey & Gallup, and put up in the usual manner. Upon the return of said goods, printed, to said Bailey & Gallup, they are to ship said prints to such commission houses as they may approve, and obtain such advances upon them as

they may be able to do without reclamation upon said Bailey & Gallup from said commission houses for any deficiency in the sales thereof, and apply the amount so advanced, first, to pay for such brown cloths, at the cost thereof, together with interest, fire and marine insurance, and any sum said Bailey & Gallup may have advanced said Larchar, together with five per cent. commissions upon said cost, charges, and advances made by them upon said goods ; and to apply the balance that said Bailey & Gallup may derive from said goods to the credit of said Larchar, in account, towards the payment of his present indebtedness to them.

(Signed)          BAILEY & GALLUP.
                  WILLIAM LARCHAR."

" Witness, G. W. CORY."

At the same time, the defendant, the father of William Larchar, gave to the plaintiffs the following guaranty :—

" PROVIDENCE, September 4, 1856.

" For value received, I hereby guarantee the return and delivery to Bailey & Gallup, or their order, of any and all printing cloths the said Bailey & Gallup may hereafter deliver to William Larchar to be printed according to the terms of an agreement in writing, dated this day, made by them with said William Larchar for the printing of the same, provided, however, that this guaranty shall at no time be applicable to more than two (2) thousand pieces of said goods at any one time, and that the risk of insurance against fire shall be provided for by said Bailey & Gallup.

" This agreement, as far as furnishing more goods than the first two (2) thousand pieces above expressed, shall continue up to January 1st, next.

(Signed)          JOHN LARCHAR."

It was proved by the plaintiffs that they had delivered to William Larchar, under the above contract, upwards of 100,000 yards of print cloth, costing $4\frac{1}{2}$ cents per yard, $25,361\frac{1}{2}$ yards of which had never been returned at all ; and they offered to prove

that some of the prints were done in so unworkmanlike a manner, and the return of others was so delayed, in violation of the contract, that they had suffered loss in the sales of them. They also proved, that under the contract, they had advanced their notes to William Larchar to enable him to procure dye-stuffs, the discount of which he had procured by the indorsement of his father, the defendant, and for which William Larchar had given receipts as received by him under the guaranty of his father. As damages against the defendant, under the guaranty, they claimed the market value of the prints not returned, together with a remuneration for the loss they had sustained in the sales of those returned, caused by bad printing, and delay to return beyond the times stipulated in the contract.

On the other hand, the defendant offered proof, that he had tendered to the plaintiffs, in discharge of his guaranty, all the gray cloth which his son had received from the plaintiffs to print, under his contract with them, which had not been returned in prints. The presiding judge, however, rejected the proof of bad printing offered by the plaintiffs, and of tender by the defendant of the gray cloth, offered by the defendant, and instructed the jury to give to the plaintiffs, as damages under the guaranty, the cost of the printing cloths received by William Larchar, under his contract with the plaintiffs, and not returned, with interest after a reasonable time for the return of the same printed, and such damages as they should prove that they had sustained by the delay to return the prints which were returned, beyond a reasonable time; and that, in the absence of other proof, they might take the time limited for the return of the prints in the contract between William Larchar and the plaintiffs, as evidence of what was a reasonable time for the return of the goods delivered to be printed.

The jury having, under these instructions, returned as damages for the plaintiffs the sum of $1,400, the plaintiffs now moved for a new trial.

"1st. Because the court refused to permit the plaintiffs to offer any evidence as to the quality of the prints which were returned by William Larchar, as a ground of claim against the defendant; and,

Bailey & Gallup *v.* Larchar.

" 2d. Because the court instructed the jury, that the defendant's liability for the goods not returned to the plaintiffs by William Larchar, was limited to the value of the gray cloths."

*Bradley*, for the motion :—

1st. The contract of John Larchar is, in terms and in fact, a contract of guaranty, and hence imports an obligation to answer for a failure in the undertaking of a third party.

2d. It refers to another contract, namely, that between the plaintiffs and William Larchar, which the court will therefore examine in construing the guaranty.

3d. The contract of William Larchar, clearly, in terms, provides for but one return,—a return of printed goods.

4th. From the nature of the business, the return of printed goods is the only return contemplated by the parties.

5th. That which the plaintiffs were to deliver or furnish was to be printing cloths; that which was to be returned was to be prints.

6th. If the guarantor meant to reserve the right to return the cloth in any other shape than that of prints—say, the gray cloth or bleached, or in any of the stages of printing—he ought to have said so.

7th. If he could not discharge himself by a return of the goods in any of these intermediate stages of the work, he cannot be exonerated by a payment of their value at such time.

8th. The goods returned are to be printed in a workmanlike manner; such is the requirement of the law and of the terms of the contract.

For the rule applied to the construction of guaranties, see *Mayer* v. *Isaac*, 6 M. & W. 605, 609; *Douglass* v. *Reynolds*, 7 Pet. 113; 10 Curtis, Dec. 415; *Lee* v. *Dick*, 10 Pet. 482; S. C. 12 Curtis, Dec. 204 ; *Lawrence* v. *McCalmont*, 2 How. 426 ; S. C. 15 Curtis, Dec. 178.

*Wm. H. Potter*, against the motion :—

A claim upon a guaranty must be clearly proven. The rule of construction is " *strictissimi juris.*" *Bigelow* v. *Benton*, 14 Barb. S. C. 123–128; *Wolcott* v. *Thompson*, 6 Hill, 540; *Hunt* v. *Smith*, 17 Wend. 179 ; *Dobbin* v. *Bradley*, Ib. 422, 425; *Kellogg* v. *Stockton*, 5 Casey, 460. A guaranty must be clearly

45 *

proven. "Every ambiguity in the evidence weighs in favor of the defendant." *Russell* v. *Clark's Ex'rs,* 7 Cranch, 69.

2. The plaintiff must use diligence to obtain satisfaction from the principal, before resorting to the guaranty. *Gilbert* v. *Henck,* 6 Casey, 205. "A contract of guaranty creates only a contingent liability, which becomes absolute by the diligence (if unsuccessful) to obtain satisfaction from the principal, or circumstances which excuse diligence." As to the pretended admissions of defendant, see *Chase et al.* v. *Brooks,* 5 Cush. 49 ; *Martin* v. *Winslow,* 2 Mason, 242 ; *Louisville Man. Co.* v. *Welch,* 10 How. 461–476.

AMES, C. J. Whatever may have formerly been the rule in construing ambiguous phrases in guaranties, it is perfectly well settled at the present day, that if the guarantor, by the use of ambiguous language in his guaranty, renders it susceptible of two or more equally reasonable interpretations, that is to be adopted which makes most strongly against him. This is a just and sensible rule of construction, in application to written contracts in general; and we see nothing in the position of a guarantor, upon whose assurance, reasonably interpreted, another has acted, which should exempt him from it. In the case at bar, the question still remains, what is the most reasonable interpretation of the guaranty of the defendant, deducible, considering its subject, the relative condition of the parties, and their probable intent, from the language employed in it?

William Larchar, the son, a small calico printer in embarrassed circumstances, being indebted to the plaintiffs, was willing to work out the debt, as the common phrase is, if the plaintiffs would furnish him cloths to print; and the plaintiffs, on the other hand, considering his circumstances, were desirous in this way to secure their debt, if they could do so with security for the value of their cloths whilst in his hands to print, which, in the necessary course of printing, would become so confused with cloths of the printer and of others in his possession, that, although they were to remain throughout the whole process the property of the plaintiffs, they could not, in case of attachment or fraudulent appropriation, be identified. The plaintiffs accordingly asked, what, in such cases, is so common

in this community, a guaranty for the return of their print cloths; and the defendant, the father of William Larchar, was willing to become bound for his son to that extent. The principal contract, that of William Larchar with the plaintiffs, is the usual printing contract, the purpose of which is to pay a debt by work. Nothing is positively stipulated by it to be furnished to William Larchar by the plaintiffs but the gray cloth to print; they to ship and consign the prints returned, and to have their commission of five per cent. on the cost of the goods, and on any charges which they might incur in the course of shipping and delivering the goods, as well as on any advances which they might make, if they deemed themselves secure in making any, upon the goods; the net profit of the business, thus regulated by the contract, to be applied to the payment of their debt. Now, it is to secure them against danger at the only point at which any positive engagement of theirs exposes them, that the guaranty of the defendant seems to have been required and given. He does not guarantee his son's faithful performance of his part of the printing contract made with the plaintiffs, which a single sentence of a few words, written upon the back of it, would have done, but merely, as is usual in such cases, and under the circumstances might have been expected, his son's "return and delivery of any and all *printing cloths* the said Bailey & Gallup may hereafter deliver to him to be printed," under a certain contract identified by date and subject, loss by fire excepted; the guaranty being confined to 2,000 pieces at any one time, and to continue up to January 1st, 1857. The subject of the guaranty, named in the contract, is the "return and delivery of *printing cloths*," and to exclude all doubt, "*to be printed;*" and although it is true that they were not to be returned by William Larchar until printed, yet the defendant, as it seems to us, by the use of this well understood term, meant to limit his guaranty to the gray cloths, as distinguished from the prints. The argument for the plaintiffs confounds the contract of the defendant with that of his son,— the obligations of the latter with the guaranty of the former,— when, because the son was by his contract to return the goods well printed in the style ordered, it would extend the guaranty

of the father to the return of the goods in that condition, notwithstanding he has, by the use of most distinctive terms, confined it to the return of the gray cloths. It is said that the use of the words " printing cloths," instead of " prints," was accidental merely; and that the cloths are " printing cloths " even after they are printed. They are not, however, printing cloths " *to be* printed;" and indeed if the principal contract did not show, as it does, that the plaintiffs themselves used these distinctive terms appropriately, it would be quite impossible to believe that business men, in this community, could for a moment lose sight of the familiar distinction. Indeed, the nature and purpose of the contract, the relation of the parties to it, and the ordinary course of business, which in such a matter we cannot keep out of sight, leave us in no doubt that these words were purposely employed in the guaranty with the intent, by both parties, thereby to limit the guaranty of the defendant to the safe return of the gray goods only. Whatever other rules may be applicable to the construction of guaranties, the cardinal rule, for the construction of these, as well as of all other contracts, is, that they should be so construed as to carry out the plain intent of the parties to them.

In this view of this contract, we are of opinion that the judge presiding at the trial properly excluded as evidence, to swell the plaintiffs' damages, proof that the goods returned were not printed in a workmanlike manner, and, as to the goods not returned, properly instructed the jury to confine the damages to the cost of the gray goods, with interest thereon, after a reasonable time for their return printed.

This motion must therefore be dismissed with costs, and judgment be entered upon the verdict.

BOSWORTH, Justice, dissented.