395 A.2d 716.

ALLIED PLYWOOD COMPANY *vs.* CLINTON J. PEARSON.

DECEMBER 20, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.    This is a civil action in which the plaintiff seeks to recover from the defendant debts incurred by the C.J. Pearson Company, the payment of which the plaintiff claims was guaranteed by the defendant. The case was tried before a justice of the Superior Court sitting without a jury and resulted in a judgment for the plaintiff in the amount of $15,690.82 with interest and costs.[1] Hereinafter we shall refer to the plaintiff as "Allied," the defendant as "Pearson," and the C.J. Pearson Company as "the corporation."

At the time of this suit, Pearson was president, treasurer, and a stockholder of the corporation, whose specialty was the construction of boats. Apparently, as the corporation built boats, it would purchase goods and merchandise from Allied. On August 31, 1966, Pearson signed a document addressed to Allied which, in pertinent part, provided:

> "For value received and the further consideration of any credit that may hereafter from time to time extend to *C.J. Pearson,* the undersigned does hereby guarantee the full and prompt payment to you of all indebtedness which the said *C.J. Pearson* has heretofore incurred and does hereafter incur for the purchase of merchandise from you without deduction by reason of any set-off, defense, or counter-claim of the said buyer against you." (Emphasis added.)

The agreement, which was set forth on stationery bearing the corporation's letterhead, was witnessed by Alfred P. Viviani, then manager of Allied's Providence office.

Pearson argues that the trial court erred in finding that the guarantee referred to the debts incurred by the corporation when the document identified the obligor as "C.J. Pearson." The trial justice cited *Bailey & Gallup* v. *Larchar,* 5 R.I. 530 (1858), where, over a century ago, this court said:

---

[1]Shortly after trial, the parties stipulated to Pearson's motion to amend the judgment to reflect the payment of $3,700.65 to Allied by the disbursing agent for the corporation pursuant to a plan agreed to by its creditors pursuant to chapter 11 of the Bankruptcy Act.

"[I]f the guarantor, by the use of ambiguous language in his guaranty, renders it susceptible of two or more equally reasonable interpretations, that is to be adopted which makes most strongly against him." *Id.* at 534.

In construing the guarantee, we look to the guarantee's language while giving due consideration to its subject matter, the relative conditions of the parties, and their probable intent. 5 R.I. at 534. Pearson's use of "C.J. Pearson" in the guarantee raises only one "reasonable interpretation." There is no evidence indicating that Allied was doing business with an entity known as "C.J. Pearson" or with Pearson personally. It would be unreasonable for us to assume that Allied required Pearson to guarantee his own indebtedness before agreeing to extend credit to him personally.

One of the witnesses at the Superior Court hearing was Dean Hodgdon. He became manager of Allied's Providence office in 1968. Hodgdon testified that he personally approved the extension of credit to the corporation on several occasions and would not have done so without Pearson's guarantee. In addition, approximately 6 weeks after signing the guarantee, Pearson asked his and the corporation's accountant, Albert O. Putnam, to submit a personal balance sheet to Allied's credit manager. These facts, along with the use of the corporation's stationery to draft the guarantee, point unerringly to but one "reasonable" conclusion, namely, that the "C.J. Pearson" alluded to in the guarantee was intended to refer to the corporation and not Pearson.

A second issue raised by Pearson is that the trial justice erred in admitting into evidence a statement of the corporation's account with Allied. In passing on this question, the trial justice ruled that the statement was a "fair and accurate document fairly representing the orders" filled by Allied for the material charged to the corporate account. Pearson argues that since the office manager did not prepare the statement, his testimony alone is insufficient to authenticate its accuracy. Thus, Pearson claims that the statement of account constitutes objectionable hearsay because Allied

failed to bring it within the so-called business records exception.

Pearson refers us to 30 Am. Jur. 2d *Evidence* §947 (1967), for the proposition that books of account are only admissible after they have been authenticated by the party who made the entries or some person who knew the entries to be correct. This proposition was essentially the rule as it existed at common law. However, the legislatures in more than half the states, including our own, have abandoned the common-law rule and enacted statutes governing the admission of business records as competent evidence. Our business record legislation is G.L. 1956 (1969 Reenactment) §9-19-13.[2] A business record is admissible in this state if the trial justice finds that (1) the record was made in the regular course of business, (2) it was the regular course of business to make such a record, and (3) the record was made at or near the time of the act, transaction, or event. *Webbier* v. *Thoroughbred Racing Protective Bureau, Inc.*, 105 R.I. 605, 618, 254 A.2d 285, 292 (1969). Before admitting the record, the trial justice *may, in his discretion,* require the party offering the document to call as a witness the person who made the writing or one who has personal knowledge of the facts stated therein. Pearson's contention that authentication of a business record must be established by the maker of the writing is, therefore, no longer the rule in this state. Indeed, in *Quint* v. *Pawtuxet Valley Bus Lines*, 114 R.I. 473, 335 A.2d 328 (1975), we recognized that §9-19-13 dispensed with the necessity of having the maker and each human link in the chain of information testify before a record could be properly admitted. The testimony of Dean Hodgdon explaining his employer's billing procedures and business practices was more than sufficient to verify the accuracy of Allied's statement of the

---

[2]In *Quint* v. *Pawtuxet Valley Bus Lines*, 114 R.I. 473, 335 A.2d 328 (1975), we noted that "[o]ur statute was first enacted in 1928. Public Laws 1928, ch. 1161, §1. Its language today is the same as when the original statute became law. It is fashioned after and is in all major aspects identical to the Model or so-called Commonwealth Fund Act that was the product of a commission headed by Professor Edmund Morgan." *Id.* at 479-80, 335 A.2d at 332.

corporation's account. Accordingly, the trial justice did not err when he admitted the account without requiring testimony from its preparer.

Pearson's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Richard R. Ackerman, Inc.,* for plaintiff.

*Henry M. Swan,* for defendant.