**RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, Plaintiff,**

v.

**The OHIO CASUALTY INSURANCE COMPANY, Defendant.**

Civ. A. No. 82–0274–B.

United States District Court, D. Rhode Island.

July 26, 1985.

Gordon P. Cleary, George Vetter, Vetter & White, Providence, R.I., for plaintiff.

Barbara S. Cohen, Levy, Goodman, Semonoff & Gorin, Providence, R.I., for defendant; Louis J. Burnett, Simpson, Moran & Burnett, Birmingham, Mich., of counsel.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

The Plaintiff, Rhode Island Hospital Trust National Bank ("The Bank"), seeks payment as assignee of two bonds issued by the Defendant, Ohio Casualty Insurance Company ("Ohio"), in the total amount of $675,000. The bonds were issued to secure payment for wood burning stoves ordered from Franklin Cast Products, ("Franklin Cast"), a Rhode Island Corporation, by its distributor, Franklin-America, Inc., ("Franklin-America"), a Michigan corporation.

Bond # 2–130–962 provides in its entirety:

KNOW ALL MEN BY THESE PRESENTS, that Franklin-America, Incorporated, as Principal, and The Ohio Casualty Insurance Company, an Ohio Corporation of Hamilton, Ohio, as Surety, are held and firmly bound unto Franklin Cast Products, Inc., as Obligee, in an amount not to exceed Three-hundred Fifty-thousand Dollars ($350,000) for the payment whereof the Principal and Surety bind themselves firmly by these presents.

WHEREAS, the Principal and Obligee have entered into an agreement dated November 5th, 1979 whereby the Principal will act as the distributor for the Obligee's merchandise in less than one shipping container amounts, and

WHEREAS, the agreement calls for the Principal to receive merchandise and make payment to the Obligee according to specified terms,

NOW THEREFORE THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall receive merchandise and make payment to the Obligee according to the terms of the agreement, then this obligation shall be null and void, otherwise to remain in full force and effect.

The term of this bond shall be for the period from signature date to July 31, 1980.

This bond may be terminated by any party thereto by giving fifteen (15) days prior notice of cancellation. Such cancellation will in no way effect orders placed for delivery prior to the effective date of cancellation.

Signed, sealed and dated December 15, 1979.

Bond # 2–130–963 in the amount of $325,000 is identical in form except that the fifth paragraph stating the term of the bond is omitted.

■ The parties disagree as to whether the bonds are penal sums to be paid upon the failure of Franklin-America to pay for stoves delivered by Franklin Cast or whether they are surety bonds that limit liability to the net amount actually due Franklin Cast from Franklin-America. The labels of "guaranty" or "surety" do not control the meaning of the bonds. Rather, the relevant intent of the parties, manifested by the terms of the agreement, controls.

## FACTS

From 1977 through 1981, the Bank financed Franklin Cast's purchases of stoves from a Taiwanese supplier for resale. The Bank predominately used back-to-back letters of credit, issuing them for Franklin Cast's account to Franklin Cast's supplier. In turn, Franklin Cast and the Bank took a commercial letter of credit from Franklin's customers as the Bank's security for the money it advanced to Franklin Cast to purchase the stoves.

In November, 1979, Franklin-America and Franklin Cast entered an agreement under which Franklin-America was to distribute stoves for Franklin Cast. Franklin-America was uncomfortable with letter-of-credit financing and requested that they use surety credit rather than bank credit.

The principals of Franklin-America were also engaged in the construction business and had obtained payment and performance bonds from Ohio. Franklin-America then asked Ohio, to draw up bonds for the benefit of Franklin Cast. While earlier bonds were issued and cancelled, ultimately, Ohio issued two bonds in the amounts of $325,000 (# 2–130–963) and $350,000 (# 2–130–962) each, on December 15, 1979. Bond # 2–130–962, in the amount of $350,000, was limited in term up until July 31, 1980. On December 20, 1979, Franklin Cast advised Ohio that it had assigned all of its "claims and their proceeds, which might arise [presently] or in the future" out of the two bonds, to Rhode Island Hospital Trust. Ohio "acknowledged" receipt of the notice of assignment although it had denied the assignability of earlier issued bonds. Plaintiff claims that it advanced money to Franklin Cast in reliance

on the assignment to it of the rights to proceeds under the bonds.

In July, 1980, Franklin-America and Franklin Cast agreed to extend time for payment of all outstanding invoices until March 31, 1981. Franklin Cast requested that Ohio consent to extensions on the bond that was limited to July 31, 1980. Ohio refused and cancelled that bond after July 31, 1980.

On June 9, 1981, Franklin Cast notified Ohio that due to nonpayment of invoices in the amount of $625,257.74, as of December 31, 1980 for stoves shipped, it intended to proceed against the surety bonds for payment if payment was not received by the end of the year (1981). Franklin Cast had not pursued payment from Franklin-America first.

Franklin-America cancelled the "open" bond in July, 1981 and sent notice to Franklin Cast. It then sued Franklin Cast on the underlying contract regarding the disputed shipment of stoves, alleging defects in the goods in the United States District Court for the Eastern District of Michigan.

By November, 1981, Franklin Cast was out of business. On March 10, 1982, a default judgment was entered against Franklin Cast in the amount of $901,000, in the United States District Court of the Eastern District of Michigan. The Defendant claims that Franklin-America is entitled to raise the affirmative defense of Franklin Cast's breach of the contract and to preclude this litigation by giving *res judicata* effect to the prior Michigan action.

Whether or not the Plaintiff is subject to that defense depends on whether Ohio was a surety or a guarantor of payment, and whether the Bank is an assignee of Franklin Cast's contract claim or of the proceeds under the bonds.

Plaintiff claims that Franklin America's failure to pay automatically triggered Ohio's liability on the bonds. Defendant contends that because the bonds are a surety agreement, Ohio may use the defenses, available to Franklin-America under the principal agreement, against the Bank. It also claims that it owes nothing to the Bank because the bonds were nonassignable. Also, Ohio contends that bond # 2–130–962 was limited in time to July 31, 1980 and that because Ohio refused to extend the time for payment of the bond, it expired on the stated date.

## CONSTRUCTION OF BONDS

The primary issue before the Court is the construction of the bonds, which appear to be a hybrid of guaranty and surety instruments. Contracts of guaranty and suretyship both promise to answer for the debt of another; their difference lies in their intended purpose. 38 Am.Jur.2d *Guaranty* §§ 14–16 (1968). Sometimes the two are indistinguishable. *See Texas Water Supply Corp. et al. v. Reconstruction Finance Corp.,* 204 F.2d 190, 194 (5th Cir.1953). Generally, a guaranty is collateral to the primary agreement and binds the guarantor to perform upon the fact of nonperformance of the primary contract. It is a contract of secondary liability. *See* 38 Am.Jur.2d *Guaranty* § 15 (1968). Conversely, a surety generally is primarily and jointly liable with the principal debtor and agrees to take over performance of the principal. *See generally* A. Stearns, *The Law of Suretyship* at 2 (5th ed. 1951). Therefore, the surety may use any defenses available to the principal debtor against the creditor. Generally, the liability of the surety may be limited because it is measured by the liability of the principal debtor. *See* 74 Am.Jur.2d *Suretyship* § 25 (1968).

In determining the construction of the bonds, the probable intent of the parties, shown by the language of the document controls. *Allied Plywood Co. v. Pearson,* 121 R.I. 72, 75, 395 A.2d 716, 718 (1978). Both Rhode Island and Michigan hold that if the language is ambiguous, the document is construed most strongly against the drafter, who is in this case, Ohio. *Bailey & Gallup v. Lachar,* 5 R.I. 530, 534 (1858); *Post v. Maryland,* 68 Mich.App. 182, 187, 242 N.W.2d 62, 65 (1976). But, this analysis must also pro-

duce a reasonable interpretation as deduced from the relative conditions of the parties, their probable intent, and the subject of the bonds. *Allied Plywood, supra,* 121 R.I. at 75, 395 A.2d at 718.

Although the bonds in question use the term "surety" and are signed by Franklin-America and Ohio Casualty, they do not state whether both these parties may be jointly and severally liable and contain only an ambiguous reference to the underlying agreement. Both bonds contain the following language:

> NOW THEREFORE THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall receive merchandise and make payment to the Obligee according to the terms of the agreement then this obligation shall be null and void, otherwise to remain in full force and effect.

Defendants claim that this provision, in effect, incorporates performance of the underlying obligation of the parties. Yet, literally, on its face, it merely provides the condition upon which the obligor is released from liability, the receipt of merchandise and payment according to the agreement.

■ A promise by a surety would include doing any and all things which were to be done by the principal debtor. *See Peterson et al. v. Miller Rubber Co. of New York,* 24 F.2d 59, 62 (8th Cir.1928). The bond agreement does not reveal that Ohio would assume any duties of Franklin-America described in the distributor contract and there is no evidence that Ohio was prepared to become involved in the stove business.

■ In construing the language most strongly against the drafter, the problematic words "according to the terms of the agreement," appear merely to refer to a collateral agreement. The drafter could easily have incorporated the distributor agreement expressly, limiting its liability. Similarly, it could have included language making its liability joint and several with Franklin America's. Ohio's reference in the bonds to the "terms" of the underlying agreement does not draw the entire agreement into the bond. The general construction rule of contracts instructs that "a reference by the contracting parties to an extraneous writing for a particular purpose makes it part of their agreement only for the purpose specified." *Lodges 743 and 1746, International Association of Machinists v. United Aircraft Corporation,* 534 F.2d 422, 441 (2d Cir.1975), (citing *Guerini Stone Co. v. P.J. Carlin Construction Co.,* 240 U.S. 264, 277, 36 S.Ct. 300, 306, 60 L.Ed. 636 (1916)). Therefore, the language appears to condition Ohio's liability merely on receipt of merchandise and nonpayment by Franklin-America, which supports a guaranty interpretation of the bond.

■ The language must also support a guaranty interpretation after taking into consideration the conditions of the parties, their probable intent, and the subject of the bond. *Allied Plywood, supra,* 121 R.I. at 75, 395 A.2d at 718; *Feutz v. Massachusetts Bonding & Insurance Co.,* 85 F.Supp. 418, 425 (E.D.Mo.1949), *aff'd,* 182 F.2d 752 (8th Cir.1950). Collateral security, or security that is secondary to the underlying agreement, is customarily used in the commercial setting such as this where the subject of the security is goods. Here, the parties deliberately contracted to change the method of security from letters of credit to bonds. The critical point of analysis then is the intended purpose of the bonds, determined through the objective intention and mutual purpose of the parties. *Kassin v. Arc-Mation, Inc.,* 94 Mich. App. 520, 524–25, 288 N.W.2d 413, 415 (1979); *Hill v. M.S. Alpert & Son, Inc.,* 106 R.I. 38, 47, 256 A.2d 10, 15 (1969). There is no evidence that the parties intended to avoid collateral security and create joint liability. Rather, the purpose of using bonds rather than letters of credit was primarily to benefit Franklin-America by freeing up its bank funds.

Plaintiff claims that the manifest purpose of the bonds was to act as a substitute for the letters of credit and induce the Bank to make extensions of credit to

Franklin Cast. Ohio knew that security was required as a condition of any sales of Franklin Cast stoves to Franklin-America. However, there is no evidence that the principal or Ohio were aware that the bonds would be used to induce the Bank to extend credit to Franklin Cast. Ohio claims it thought the bonds would guaranty the agreement between Franklin-America and Franklin Cast for Franklin Cast's benefit. (Deposition of William K. Law pp. 6–7).

 Whether or not Ohio contemplated the Bank's loan is irrelevant, however, after considering the commercial setting of the parties, the subject of the bonds, and the absence of language creating joint liability. Consideration of language of the bonds and the surrounding circumstances shows that the bonds are most reasonably susceptible to a guaranty construction.

Therefore, the Court need not consider any possible defenses available to Ohio on the underlying distributor agreement.

## ASSIGNMENT

 The next issue is whether, in the absence of express language in the bonds, they are properly assignable to the Bank or whether this assignment severed Ohio's liability. Usually, general guarantees, which are addressed to persons generally, may be enforced by anyone to whom they are presented. Special guarantees, which name particular obligees, may usually only be enforced by the named persons. See 38 Am.Jur.2d Guaranty § 20 (1968). Here, the bonds name Franklin Cast as a specific obligee, making the guaranty special.

 The law of Rhode Island and Michigan differ on the assignability of special guarantees. Whether the law of the place where the guaranty was made and performed, or the law of the place where the guaranty was accepted will control depends on the choice of law rule for Rhode Island. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941). Because Rhode Island has not ruled on the choice of laws for a financial guaranty, the Court must apply the law of the state with the most significant relationship to the transaction. Rhode Island follows the general choice of law principles in determining the most significant relationship: predictability of results, maintenance of interstate order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law. Turcotte v. Ford Motor Co., 494 F.2d 173, 177 (1st Cir.1974).

The negotiations between Franklin Cast and Franklin-America took place in Michigan and the bonds were executed there. Plaintiff later became an assignee. The only Rhode Island connection at the time of the execution of the bonds was that the Obligee was a Rhode Island corporation. Michigan was also the situs of any event triggering liability. However, the agreement was accepted in Rhode Island and later assigned in Rhode Island.

 Michigan has adopted the modern rule of financial guarantees, the "Illinois rule," which states that special guarantees, as well as general guarantees, are assignable as long as the assignment of a special guaranty does not materially alter the guarantor's undertaking. The guarantor must show prejudice. See Chris Nelson & Son, Inc. v. Michigan Corp., 84 Mich.App. 29, 32–33, 269 N.W.2d 295, 297 (1978). Rhode Island courts have not addressed this specific issue since the 1880 decision of King & King v. Batterson, 13 R.I. 117, 119–20 (1880), which holds that special guarantees are not assignable.

 Rhode Island may be considered the place of the "making" of the guaranty, in applying general contract principles. Franklin-America and Ohio signed the instruments in Michigan and delivered them to Franklin Cast in Rhode Island.

 Michigan, however, has the more important contacts with the drafting and performance of the bonds, and has a significant interest in determining the negotiability of the bonds made there. Whether

Rhode Island would continue to follow its 1880 decision on nonassignability of a special guarantees is a consideration also, in terms of what is the better rule of law. Modern business conditions would seem to require favoring assignability. Therefore, the parties could reasonably predict that Michigan law would apply. These considerations show Michigan has the more significant interest in the bonds.

 In applying the "Illinois rule," the assignment will be valid absent a showing of prejudice on the part of the Defendant. Ohio has shown no such prejudice. It claims that the assignment severed the obligation of Franklin Cast to sell the goods from its right to receive payment. This condition that Franklin Cast would provide buyers for the merchandise was a part of the distributor agreement, but, this was never a condition of the bond agreement, therefore, the assignment of the bond could not sever this obligation from the right to receive payment and it did not prejudice Ohio.

### EXTENSION OF TIME TO THE DEBTOR

In July, 1980, Franklin Cast requested Ohio to extend the time of payment on one of the bonds, in the amount of $350,000 (# 2–130–962), from July 31, 1980 to March 31, 1981. Ohio refused this request, and cancelled this bond. The other bond, in the amount of $325,000, was not limited by date.

The guarantor's refusal to consent to an extension of time for payment of the principal obligation discharged it from liability. *See* 38 Am.Jur.2d *Guaranty* § 92 (1968). However, when an extension of time is contemplated within the agreement, such extension does not discharge the guarantor. *See Old Stone Bank v. McKenney,* 456 A.2d 266, 268 (R.I.1983). Where the underlying agreement is for the sale of goods, the parties could reasonably anticipate modifications and extensions of time for payment. Therefore, the bond not limited by date is a continuing bond, which

is unaffected by an extension of time in the underlying agreement.

The Plaintiff may recover the principal sum of the bond, # 2–130–963 in the amount of $325,000. But, it is precluded from collecting under the limited bond, # 2–130–962 in the amount of $350,000, which expired on July 31, 1980. Judgment will enter for Plaintiff in the amount of $325,000, plus interest and costs.

SO ORDERED.