354 So.2d 91 (1977)
Edward H. WARNER et al., Appellants,
v.
Robert F. CALDWELL et al., Appellees.
No. 76-1185.
District Court of Appeal of Florida, Third District.
December 27, 1977.
*92 Frates, Floyd, Pearson, Stewart, Richman & Greer and William S. Frates and James D. Little, Brinkley & McNerney, Ft. Lauderdale, for appellants.
Smathers & Thompson and Earl D. Waldin, Jr., Joseph P. Averill, Knight, Peters, Hoeveler, Pickle, Niemoeller & Flynn, Miami, for appellees.
Before HENDRY, C.J., and NATHAN and KEHOE, JJ.
HENDRY, Chief Judge.
This appeal is taken by appellants, plaintiffs below, from an adverse judgment entered pursuant to a jury verdict rendered in favor of appellees, defendants below. The judgment resulted in the exoneration of appellees from liability as guarantors on two notes held by appellants, as trustees of Wachovia Realty Investments.
Taken in the light most favorable to the successful appellees, the facts are as follows: Caldwell Plaza Ltd., sought financing for the construction of an office building. Through the services of a mortgage broker, they received a commitment for the needed construction funds from Wachovia Mortgage *93 Company, the advisor to Wachovia Realty Investments. The loan was to be made to a corporate entity, so Caldwell Plaza Corporation was organized and shares of stock sold to both the former general and limited partners of Caldwell Plaza Ltd., as well as other interested investors.
Pursuant to the commitment letter, the lender required a satisfactory "fixed-cost" construction contract with an acceptable general contractor, secured by a "dual-obligee" bond. (This requirement was later formalized in the construction loan agreement executed by appellants and Caldwell Plaza Corporation and by reference, made a part of the guaranty agreement). The commitment letter further provided that the construction loan was to be funded pursuant to the conditions and requirements of a permanent loan commitment from New York Life Insurance Company of $2,670,000.00. In addition, Wachovia required the personal guaranty of the various stockholders, and their respective wives, prior to funding the loan.
[For purposes of this opinion, it is most important to segregate the various guarantors into two distinct groups. Group I consists of Messrs. Gamble, Gilroy and Winningham, the architects of the project. Group II consists of Robert E. and Carolyn H. Caldwell, Jack R. and Aurie Brock, Franklyn S. and Thelma S. Collins, Dorothy T. Groom and Joseph J. Groom, Jr., as Executors of the Estate of Joseph J. Groom, Stanley and Marian Sneider, William J. and Lila K. Washata.]
Pursuant to the direction of appellant, a guaranty agreement was prepared and signed by both the members of Group I and Group II. That agreement, in pertinent part, is as follows:
"GUARANTY AGREEMENT
"WHEREAS, the undersigned have requested WACHOVIA REALTY INVESTMENTS, an unincorporated Business Trust organized under the laws of the State of South Carolina, pursuant to a Declaration of Trust dated December 10, 1969, as amended, on file in the office of the Secretary of State of South Carolina (hereinafter called W.R.I.) to extend credit to CALDWELL PLAZA CORPORATION, a Florida corporation (hereinafter called Borrower) for a real estate mortgage loan in a total amount of $3,300,000.00 to be evidenced by two notes, one in the principal sum of $3,300,000.00 and a `gap financing' note in the principal sum of $630,000.00, secured by two real estate Mortgages and a Building Loan Agreement and W.R.I. has extended such credit and/or may in the future extend credit by reason of such request and in reliance upon this guaranty;
"NOW, THEREFORE, in consideration of such credit extended and/or to be extended by the W.R.I. to the Borrower, the undersigned jointly and severally hereby unconditionally guarantee to W.R.I. and its successors, endorsees and assigns the punctual payment when due, with such interest as may accrue thereon either before or after any maturity thereof, of the aforesaid two notes in the face amount of $3,300,000.00 and $630,000.00 given by the Borrower to W.R.I. of even date, and further unconditionally guarantee payment of other monies due or which may become due thereon, and the due and punctual performance and observance by the Borrower of all the other terms, covenants and conditions of the aforesaid two notes and the two Mortgages, the Building Loan Agreement and any other instruments securing same, whether according to the present terms thereof, at any earlier or accelerated date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants and conditions thereof now or at any time hereafter made or granted.
"The undersigned consent that the whole or any part of the security now or hereafter held for the aforesaid two notes of the Borrower may be exchanged, compromised, or surrendered from time to time; that the time or place of payment of the aforesaid indebtedness of the Borrower or of any securities therefor may be changed or extended, in whole or in *94 part, to a time certain or otherwise, and may be renewed or accelerated, in whole or in part; that the Borrower may be granted indulgences generally; that any of the provisions of any note or other instrument evidencing any of the aforesaid indebtedness of the Borrower or any security therefor may be modified or waived; that any party liable for the payment thereof (including but not being limited to any co-guarantor) may be granted indulgences or released; that neither the death, bankruptcy nor disability of any one or more of the guarantors shall affect the continuing obligation of any other guarantor, and that no claim need be asserted against the personal representative, guardian, trustee in bankruptcy or receiver of any deceased, incompetent, bankrupt or insolvent guarantor; and that any deposit balance to the credit of the Borrower or any other party liable for the payment of the aforesaid indebtedness of the Borrower or liable upon any security therefor may be released, in whole or in part, at, before and/or after the stated, extended or accelerated maturity of the aforesaid indebtedness of the Borrower, all without notice to or further assent by the undersigned, who shall remain bound thereon, notwithstanding any such exchange, compromise, surrender, extension, renewal, acceleration, modification, indulgence or release."
The wives of the guarantors of Group I, however, did not sign the agreement, in contravention of the commitment letter.
Appellants actually extended credit to Caldwell Plaza Corporation on March 28, 1972. In the interval between the signing of the above guaranty agreement and the actual extension of credit, there were several material occurrences. First, after the guaranty agreement was forwarded to appellants on March 7, 1972, there was concern because the wives of the Group I guarantors had not signed the agreement. Appellants thereupon sent a second agreement to Group I signatories requesting them to execute a "non-transfer of assets" agreement. This agreement was submitted to the attorney of Group I, who thereupon prepared a modified offer of guaranty, which was signed by the three guarantors and forwarded to appellants' house counsel by letter, dated March 20, 1972. This agreement is set forth as follows:
"AGREEMENT
"THIS AGREEMENT, made and entered this 17th day of March, 1972, by and between CLINTON GAMBLE, WILLIAM A. GILROY and JOHN WINNINGHAM, hereinafter collectively referred to as Guarantors, parties of the first part, and WACHOVIA REALTY INVESTMENTS, an unincorporated Business Trust organized under the laws of the State of South Carolina, pursuant to a Declaration of Trust dated December 10, 1969, as amended, on file in the office of the Secretary of the State of South Carolina, hereinafter referred to as Lender, party of the second part:
"WITNESSETH:
"WHEREAS Lender has agreed to make a loan to CALDWELL PLAZA CORPORATION, a Florida corporation in the total sum of THREE MILLION THREE HUNDRED THOUSAND DOLLARS ($3,300,000.00) to be evidenced by two notes, one in the principle sum of $3,300,000.00 and a "gap financing" note in the principal sum of $630,000.00 secured by two real estate mortgages and a building loan agreement pursuant to its loan commitments to CALDWELL PLAZA CORPORATION dated January 17, 1972 and January 19, 1972; and
"WHEREAS Guarantors together with certain other parties, jointly and severally have agreed to guarantee the payment of said loan by a guarantee agreement; and
"WHEREAS Guarantors are desirous of limiting the term of their liability under said note obligations and under said guaranty agreement to that period of time during construction and up until the time that the New York Life Insurance Company exercises its mortgage loan commitment and acquires said $3,300,000.00 mortgage from WACHOVIA REALTY INVESTMENTS: and

*95 "WHEREAS WACHOVIA REALTY INVESTMENTS is agreeable to the term liability limitation of Guarantors providing that Guarantors will agree that they will not sell, trade, convey or transfer any of their personal assets, directly or indirectly, to their spouses or any of their relatives of the first, second or third degree without first obtaining the consent of the Lender;
"NOW THEREFORE, in consideration of the mutual promises herein contained on each party's part to be kept performed and in consideration of the sum of One Dollar cash in hand paid by each party to the other, the receipt and sufficiency of which are hereby acknowledged, the parties hereto promise and agree with the other as follows:
"1. In the event of a conflict between the terms and conditions of this agreement and any other agreement heretofore entered into between the parties hereto, including by way of illustration and not in limitation, that instrument entitled `Guarantee Agreement' heretofore executed by Guarantors in favor of Lender, this agreement entered this day shall govern and control the rights and obligations of the parties with respect to each other concerning the things herein set forth.
"2. Lender agrees that the period of time within which the Guarantors shall be liable under the `Guarantee Agreement' heretofore executed by Guarantors in favor of Lender shall be that period of time beginning with the disbursement by Lender of the first monies under the notes which Guarantors have guaranteed and ending on the date that the New York Life Insurance Company or any other such lender shall acquire the permanent mortgage loan on the subject property. Guarantors agree that in consideration of the limited period of time they are liable under the Guaranty Agreement, that they will not during such limited period sell, trade, convey or transfer any of their personal assets, directly or indirectly, to their spouse or to any other relative of the first, second or third degree without first obtaining the consent of the Lender, to the end that their personal assets will be available to satisfy their proportionate part of the aforementioned loan made by Lender to CALDWELL PLAZA CORPORATION and as guaranteed by them.
"IN WITNESS WHEREOF the parties have hereunto set their hands and seals the day and the year first above written."
As the building of the project progressed, it became increasingly evident that the allotted funds would be insufficient to complete the work. In May of 1972, the fixedcost contract executed by Caldwell Plaza Corporation and the bonded contractor, Bartlett Construction Company, was terminated and appellants agreed to an arrangement wherein Caldwell was permitted to form a corporation and complete the project on a "cost-plus" basis, without bond.
The liability on the existing Bartlett bond was reduced from $2,850,000.00 to $2,263,000.00. The authorization to terminate the "fixed-cost" contract and reduce the bond was made by appellants without the consent of the various guarantors.
In October of 1973, New York Life Insurance Company acquired the permanent mortgage loan. Subsequently, in February of 1974, New York Life declared a default in the permanent loan by Caldwell Plaza Corporation and foreclosed its first mortgage. The foreclosure effectively "wiped out" the second mortgage security interest of appellants, i.e., the $630,000.00 "gap" financing note referred to in the guaranty agreement. In June of 1974, appellants demanded payment on this note from the guarantors. When payment was refused, appellants filed suit seeking to enforce the guaranty agreement.
At trial, appellees basically relied upon two lines of defense. Group I claimed that they were relieved of any liability on the first guaranty by virtue of appellants "accepting" their second "offer" of guaranty. As set forth above, by the terms of the second guaranty, the liability of Messrs. Gamble, Gilroy and Winningham ceased *96 when New York Life Insurance Company acquired the permanent mortgage loan.
The guarantors comprising Group II, not having signed the second "offer" of guaranty, argued that they were relieved from liability on the guaranty by virtue of the fact that appellants had reduced the security bond without the consent of appellees and had terminated the "fixed-cost" construction contract, replacing it with a "cost-plus" contract, without bond, all contrary to the terms of the building loan agreement which was expressly made a part of the guaranty agreement.
After a jury trial which lasted five days, verdicts were returned in favor of the various guarantors. Final judgment was entered pursuant to the verdict, and this appeal follows:
After carefully reviewing the record, briefs and arguments of counsel, it is our opinion that there was competent substantial evidence for the jury to find for the various guarantors based upon their respective defenses. As such, and for the following reasons, the final judgment is hereby affirmed.
Firstly, it is important to note that the rules applicable to contracts, generally, likewise apply to contracts of guaranty and therefore, in order to have a binding contract, it is necessary, among other things, to have the guarantor's offer of guaranty accepted by the creditor. See 38 Am.Jur.2d Guaranty, § 1 (1968). Secondly, a careful review of the contract of guaranty reveals that the bargained for act was the actual lending of money by appellant (creditor) to the primary debtor (Caldwell Plaza Corporation). As such, this was a unilateral contract whereby the "offer" of guaranty was not accepted until the time of the actual funding of the loan. 7 Fla.Jur. Contracts § 3 (1956). Sub judice, there was competent substantial evidence for the jury to find that the second "offer" of guaranty, limiting the liability of the Group I guarantors, was communicated to appellants prior to the actual bargained for act and was, in fact, the "offer" accepted by appellants. Thus, Messrs. Gamble, Gilroy and Winningham were relieved of liability on the guaranty when New York Life funded its permanent loan commitment.
As for the Group II guarantors, there was competent substantial evidence for the jury to award a verdict in their favor based upon appellants' impairment of the security, i.e., reduction of the bond, and change in the terms of the construction contract without the assent of the guarantors. Notwithstanding language in the guaranty agreement to the effect that the contract of guaranty would be "unconditional", beyond the duties imposed in the contract of guaranty, the law imposes on the creditor an obligation not to deal with the debtor, or any security for the debt, in such a manner as to harm the interest of the guarantors. Dorsey v. Maryland National Bank, 334 So.2d 273 (Fla. 3d DCA 1976). With the above in mind, we cannot say as a matter of law, that a jury could not relieve the guarantors of their responsibility on the guaranty by virtue of the aforementioned acts of appellants.
Notwithstanding the facts as interpreted by the jury, appellants have raised a number of points on appeal. As to those points which we believe deserve comment, a discussion follows.
Appellants claim that where, as here, a guaranty agreement calls for both the absolute and unconditional guarantee of payment, that guarantee cannot be limited or qualified by reference to evidence outside of the agreement, itself. Sub judice, the guaranty, itself, specifically made reference to the building loan agreement and therefore, it was not error for the trial judge to allow the Group I guarantors to refer to a breach of said agreement as a defense to their liability on the guaranty. Schaeffer v. Gilmer, 353 So.2d 847 (Fla. 1st DCA 1977), opinion filed August 4, 1977.
Appellants next contend that the trial court erred in its various instructions to the jury. After carefully reviewing the instructions as a whole, however, we cannot say that the jury was misled as to the effect *97 of the law to be applied to the actual situation before it and accordingly, find that no error has been committed. Mohasco Industries, Inc. v. Maxwell Company, Inc., 425 F.2d 436 (5th Cir.1970); Keyser v. Brunette, 188 So.2d 840 (Fla. 2d DCA 1966); Taran v. Sea Coast Appliance Distributors, Inc., 164 So.2d 274 (Fla. 3d DCA 1964); Royal Kitchen Cabinet Corporation v. Palcic, 111 So.2d 42 (Fla. 3d DCA 1959).
Finally, appellants claim error on the part of the trial judge in both admitting certain exhibits into evidence during the course of the trial and taxing certain costs against appellants after the trial's conclusion. Both the imposition of costs after judgment and the admission and/or exclusion of evidence during the course of the trial are matters largely within the discretion of the trial judge and will not be disturbed on appeal without a clear showing of abuse of that discretion. General Capital Corporation v. Tel. Service Co., 239 So.2d 134 (Fla. 2d DCA 1970); 2 Fla.Jur. Appeals, § 337 (1963). Appellants have not demonstrated that the trial court clearly abused its discretion in either of the above areas.
Accordingly, the judgment appealed from is affirmed.
Affirmed.
NATHAN, J., dissents.