**RHODE ISLAND HOSPITAL TRUST NATIONAL BANK, Plaintiff, Appellee,**

v.

**The OHIO CASUALTY INSURANCE COMPANY, Defendant, Appellant.**

No. 85–1876.

United States Court of Appeals, First Circuit.

Argued Feb. 6, 1986.

Decided April 25, 1986.

Louis J. Burnett, Birmingham, Mich., with whom Anthony F. Muri, Barbara S. Cohen, Licht & Semonoff, Providence, R.I., were on brief, for defendant, appellant.

George Vetter, with whom Gordon P. Cleary, Vetter & White, Providence, R.I., were on brief, for plaintiff, appellee.

Before COFFIN and BOWNES, Circuit Judges, MAZZONE, District Judge *.

COFFIN, Circuit Judge.

This case involves the complex world of suretyship law and its impact on the rights of two financial institutions who are parties here because of their relationships with the buyer and seller of wood burning stoves. The district court found that appellant, Ohio Casualty Insurance Company (Ohio Casualty), was required to pay to appellee, Rhode Island Hospital Trust National Bank (the Bank), $325,000 on a bond that Ohio Casualty had issued on behalf of the stove buyer, Franklin America. The bond originally had been issued to the seller of the wood stoves, Franklin Cast (Cast),[1] but Cast had assigned its right to collect to the Bank. After a careful review of the authorities and the facts, we reverse.

I. *Facts*

In November 1979, Cast, a Rhode Island corporation, entered into an agreement with Franklin America, a Michigan corporation, under which Franklin America was to distribute wood burning stoves imported from Taiwan by Cast. Cast's ability to import the stoves was dependent in the first instance on financing from the Bank. Since 1977, the Bank had been issuing letters of credit to Cast's supplier in Taiwan to secure Cast's purchases. In turn, the Bank would request a letter of credit from Cast's customers as security for the money it had advanced for the import purchases. In this case, however, Franklin America proposed the use of surety credit rather than a bank letter of credit, and the Bank agreed. Although there were other bonds issued and cancelled, the two bonds relevant here were issued by Ohio Casualty on behalf of Franklin America on December 15, 1979, in the amounts of $325,000 and $350,000.[2]

On December 20, 1979, Cast informed Ohio Casualty, Franklin America's surety, that it had assigned all of its claims on the bonds to the Bank. Ohio "acknowledged" receipt of the notice of assignment, although it previously had asserted that this type of bond could not be assigned, prompting the Bank to withdraw an earlier assignment.

On June 9, 1981, Cast notified Ohio Casualty that it intended to proceed against the bonds if Franklin America's balance of $625,257.74 for stoves shipped as of December 31, 1980, was not paid by the end of 1981. Before Cast took any such action against Franklin America and Ohio Casualty, Franklin America took the initiative. In July 1981, it sued Cast in the United States District Court for the Eastern District of Michigan, alleging, *inter alia*, breach of contract and misrepresentation in connection with the stove shipments, and seeking $1 million in damages. Cast, which went

---

* Of the District of Massachusetts, sitting by designation.

1. We refer to Franklin Cast by the second word of its name to avoid confusion with its distributor, Franklin America.

2. In fact, we are concerned only with one of those two bonds. The district court held that the Bank could not collect on the $350,000 bond because Ohio Casualty had refused to consent to an extension of payment under that bond and cancelled it in July 1980. Appellee does not appeal this aspect of the district court's judgment. We therefore consider only appellant's arguments that the $325,000 bond also should not be honored.

out of business in November 1981, did not appear to defend the Michigan suit, and a default judgment was entered against it in the amount of $901,949.

The Bank, which had been a co-defendant in the Michigan lawsuit, had successfully sought dismissal from that case on jurisdictional grounds. In April 1982, it brought the action that is the subject of this appeal, seeking payment from Ohio Casualty on the two bonds issued in December 1979. The district court, 613 F.Supp. 1197, found that the $350,000 bond had been legitimately cancelled by Ohio Casualty, but that Ohio Casualty was obligated to pay on the $325,000 bond. The district court found that, under the principles of suretyship applicable to this case, Ohio Casualty was unconditionally liable on the bonds once Franklin America failed to pay for the stoves it received. Ohio Casualty filed this appeal, claiming, *inter alia,* that the district court's view of suretyship law was in error.

## II. *Summary*

Because the law and the relationships of the parties here are complex, we believe it is helpful at the outset to summarize our discussion. We first address briefly and generally the law of suretyship, describing the two types of surety arrangements that may have been used in this case, a suretyship as a primary obligation or a guaranty. The district court held that the type of suretyship determined whether Ohio Casualty was obligated to pay the Bank on the bonds. We disagree that that question is pivotal, and so we do not discuss the question of whether Ohio Casualty served as a surety or as a guarantor for Franklin America. Instead, we move directly from our general discussion of the types of suretyship to a discussion of the defenses available to sureties and guarantors. We conclude that, whatever the nature of the suretyship here, Ohio Casualty was entitled to raise certain defenses available to its principal, among them a prior judgment in fa-

vor of the principal. This conclusion leads us to find that the original creditor, Cast, is barred from collecting on the bonds as a result of the default judgment in favor of Franklin America in Michigan.

Finally, after the discussion of defenses, we shall turn to the assignment issue. Although Cast, as the original creditor, would be barred from collecting on the bonds, we must consider whether its assignee, the Bank, which was dismissed from the Michigan action, is subject to the same defense. We conclude that it is, and we explain the principles of *res judicata,* assignment and suretyship law that lead us to such a conclusion.[3]

## III. *Discussion*

Our primary task in this case is to answer a purely legal question: whether a surety such as Ohio Casualty may assert the defenses of its principal in a suit by the beneficiary of the suretyship agreement. We thus begin with a general discussion of suretyship law, and then discuss its application to the facts of this case.

### A. *Suretyship and Its Defenses*

A suretyship is a contractual arrangement in which one party, the "surety", agrees to back up the obligation of another, termed the "principal" or "principal debtor", the latter bearing the primary burden of performing for the creditor. *See, e.g.,* 10 W. Jaeger, *Williston on Contracts* § 1211, at 683 (3d ed. 1967) (hereinafter *Williston* ) at 683; L. Simpson, *Simpson on Suretyship* 4–7 (1950) (hereinafter *Simpson* ). The term "surety" is often used broadly to include all forms of suretyship, including the "guaranty". It also is used in a narrow sense to indicate a direct, primary obligation to pay someone else's debt, as distinguished from the secondary, collateral obligation of a "guarantor". *Simpson* 6–9; *Williston* § 1211, at 684–686; E. Arnold, *Suretyship and Guaranty* § 4, at 7 (1927) (hereinafter *Arnold).* The difference between the primary obligation

**3.** Our disposition of this case means we need not discuss appellant's other arguments regarding admission into evidence of business records, and prejudgment interest.

of the surety and the secondary obligation of the guarantor is that the surety joins the original contract with the principal and may be sued as an unconditional promisor along with the principal; the guarantor's liability arises from an independent agreement and is expressly conditioned upon default by the principal. 38 Am.Jur.2d *Guaranty* § 15 (1968); *Simpson* 10–11.

■ The district court found that Ohio Casualty served in the role of a guarantor. It also ruled that sureties who bear a primary obligation to the creditor may assert the defenses of their principals, but guarantors may not do so. The court therefore refused to allow Ohio Casualty to use the Michigan default judgment as an affirmative defense against the Bank's claims on the two bonds.

We conclude that the district court's distinction between the defenses available to a guarantor and those available to a surety who has a primary obligation reflects an erroneous view of the law. The distinction between a surety serving as a primary obligor and a guarantor—that is, the primary vs. the secondary obligation—is relevant to defenses only in that a guarantor sued by a creditor has one potential defense that a surety does not: the defense that the principal has not yet defaulted. We think it is contrary to both precedent and logic to treat sureties and guarantors differently when the defense concerns the continuing viability of the underlying obligation. In fact, the terms "surety" and "guarantor" often are used interchange-

ably, reflecting their nearly identical characteristics. *Restatement of Security* § 82 (1941); *Simpson* 8; *Williston* § 1211, at 687; J. Elder, *The Law of Suretyship* § 1.5, at 4 (5th ed. 1951) (hereinafter *Law of Suretyship*); *see also C–E Building Products, Inc. v. Seal-Rite Aluminum Products of N.H.*, 114 N.H. 150, 316 A.2d 198, 198–99 (1974) (using terms interchangeably); *Morris & Co. v. Lucker*, 158 Mich. 518, 123 N.W. 21, 22 (1909). As a leading commentator points out:

> "The rights of the surety and the guarantor against the creditor are the same, provided that the creditor knows that the relation of suretyship exists. The outstanding and perhaps only important respect in which the guarantor's undertaking differs from that of the surety is that it is expressly conditioned on the principal's nonperformance of duty." *Simpson* 22.[4]

■ Because the liability of sureties and guarantors is virtually identical,[5] we need not decide which obligation Ohio Casualty agreed to undertake. Instead, we turn to the question of suretyship defenses. The basic rule on the liability of sureties is that "the surety is not liable to the creditor unless his principal is liable"[;] thus he may plead the defenses which are available to his principal", *Williston* § 1214, at 714; *Law of Suretyship* § 7.1, at 200. *See Asociacion de Azucareros de Guatemala v. United States National Bank of Oregon*, 423 F.2d 638, 641 (9th Cir.1970); *Stephens v. First Bank and Trust of Richardson*,

---

**4.** There is a difference between sureties as primary obligors and guarantors in their right to set-offs. Commentators uniformly state that if a creditor sues the surety alone, the surety may not set off the principal's independent claims against the creditor. *Williston* § 1214, at 716; *Simpson* 319–20; *Law of Suretyship* § 7.21, at 234–235. *See also Stifel Estate Co. v. Cella,* 220 Mo.App. 657, 291 S.W. 515, 518 (1927). When both principal and surety are sued jointly, however, the surety is allowed to set off the principal's claims. *Simpson* 324–25. In contrast, since a guarantor and principal usually may not be sued together, because they usually are involved in separate contracts, the guarantor almost never is able to set off the principal's claims against the creditor.

This difference between sureties and guarantors has no relevance here, however, because a guarantor (or surety) may raise set-offs or counterclaims of its principal if these have been assigned to it, or if the principal consents to their use. *See Continental Group v. Justice,* 536 F.Supp. 658, 661 (D.Del.1982). Franklin America assigned the Michigan default judgment to Ohio Casualty. Therefore, Ohio Casualty's ability to raise the Michigan default judgment in the instant case is the same whether it served as a surety or guarantor.

**5.** There is no claim here related to the Bank's alleged failure to seek payment first from Franklin America, which would be a requirement of a guaranty arrangement.

540 S.W.2d 572, 574 (C.C.A.Tex.1976); *C–E Building Products, Inc. v. Seal-Rite Aluminum Products of N.H.*, 316 A.2d 198, 199, 114 N.H. 150 (1974); *The Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109, 299 P.2d 72, 76 (1956); *Krekel v. Thomasma*, 255 Mich. 283, 238 N.W. 255, 256 (1931) (the liability of guarantors "depends on the liability of their principal"); *Stifel Estate Co. v. Cella*, 220 Mo.App. 657, 291 S.W. 515, 519 (1927) ("If the guarantee has no cause of action against the principal, certainly there could be no obligation on the part of the guarantors to pay.").

■ There are some limitations on this broad rule. None, however, is applicable here.[6] Rather, it seems to us that this case involves a specific defense that is widely recognized as available to a surety:[7] a prior judgment in favor of the principal debtor. "It is almost invariably held that a judgment in favor of the principal debtor is a conclusive answer to a suit by the creditor against the surety," *Simpson* 326; *Restatement of Security* § 139; *Williston* § 1255, at 814–815; *New Paltz Central School District v. Reliance Insurance Co.*, 97 A.D.2d 566, 467 N.Y.S.2d 937, 938 (1983). The rationale for this principle is that "since the judgment in favor of the principal determines either that he owed no duty or that there was no breach of it, it is a defense to the surety". *Simpson* 326–27.[8]

This rule on the preclusive impact of a prior judgment for the principal does not apply in every case. There is one category of suretyships in which the surety's promise is made unconditionally, so that the surety promises to pay no matter how valid the reason for the principal's failure. *Williston* § 1255, at 814; *Simpson* 327.[9] When that form of suretyship is used, the surety's only defenses are in equity. *Williston* § 1255, at 814.

■ In applying these legal principles to the facts before us, we note first that the Michigan default judgment determined that Franklin America is no longer indebted to Cast. Under the basic tenet of suretyship law, Ohio Casualty, as Franklin America's surety, would no longer be liable if its principal is not liable. If, however, Ohio Casualty's suretyship promise was unconditional, it would be liable regardless of its principal's liability, unless it could raise an equitable defense.

Although we need not decide the issue, we doubt that the suretyship here involved an unconditional promise. First, although the bonds do not expressly condition Ohio Casualty's obligation on Franklin America's improper default, neither do they state that they are unconditional. *Cf. Robey v. Walton Lumber Co.*, 17 Wash.2d 242, 135 P.2d 95, 97 (1943); *Warner v. Caldwell*, 354 So.2d 91, 96 (Fla.App.1977). The bonds state that they remain in effect *unless* the principal receives merchandise and makes payment "according to the terms of the agreement". According to

---

6. For example, a surety may not assert personal defenses of its principal, such as insanity, infancy, or duress, and also may not claim defenses that arise by operation of law, such as the statute of limitations. *Williston* § 1214, at 715–716; *Law of Suretyship* § 7.1, at 201; 38 C.J.S. *Guaranty* § 88 (1943). A surety is sometimes barred from raising the principal's defense of fraud in the inducement of the contract, *Simpson* 278–79, and some courts have held that a breach of warranty claim may not be asserted by a surety in an action against the surety alone. *Simpson* 319; 38 Am.Jur.2d *Guaranty* § 52 (1968).

7. Even if Franklin America's contract claims against Cast are viewed as counterclaims, rather than as the basis for an affirmative defense, it would make no difference in the outcome of this case because Ohio Casualty still would be able to raise the Michigan judgment as a bar to its liability. *See* note 4 *supra*.

8. We recognize that this is not the typical case in which a creditor sues his principal, judgment goes against the creditor, and the creditor next tries to sue the surety. Nevertheless, we believe the principle operates in this case as well since the Michigan judgment established that Cast was indebted to Franklin America as a result of the stove contract transaction in an amount well in excess of what Cast attempted to collect in the later suit.

9. Simpson, while acknowledging the existence of transactions involving such a promise, questions whether they are, in fact, suretyships. *See Simpson* 327 n. 10.

the Bank, this language means that once Franklin America failed to pay according to the payment terms specified in the distributorship agreement, the bonds were actionable. The Bank contends that any other failure by any party—such as the alleged breach of contract here by Cast—has no impact on the validity of the bonds. The problem is that the quoted language also can easily be read to mean that no payment is due under the bonds unless Franklin America both received appropriate merchandise (i.e., merchandise living up to contract conditions) and failed to pay for it in accordance with the contract provisions. In any case, there is no express statement that the bonds are unconditional and the language, therefore, is of little practical help.

Second, according to testimony presented at trial, the Bank knew when it accepted a surety bond that it would be more difficult to collect on it than on a letter of credit because "the insurance company would fight having to make payment." This concession suggests that the Bank realized the bonds were not unconditional, in contrast to the letter of credit it usually required in these circumstances. See J. White and R. Summers, *Uniform Commercial Code* § 18–2, at 712 (2d ed. 1980).

Third, and most significantly, the commercial context strongly refutes the notion that this is an unconditional suretyship. The security device typically considered the alternative to a letter of credit is the guaranty. *See, e.g., Barclays Bank D.C.O. v. Mercantile National Bank*, 481 F.2d 1224, 1236 n. 18 (5th Cir.1973); *Bank of North Carolina, N.A. v. The Rock Island Bank*, 570 F.2d 202, 206 and n. 7 (7th Cir.1978); *Uniform Commercial Code* § 18–2, at 712–713. The guaranty is undoubtedly preferred over the suretyship as a primary obligation because financial institutions are not in the business of entering into commercial transactions jointly with the businesses they are securing. Rather, the business of a financial institution is that of the classic suretyship—to bear the risk of an improper default by the principal. If it would be unusual for an independent financial institution like Ohio Casualty to serve as a surety in the role of a primary obligor, it would be far more unusual for it to *unconditionally* secure another business's debt. *Cf. Castle & Co. v. Public Service Underwriters*, 198 Wash. 576, 89 P.2d 506, 512–513 (1939) (court found unconditional promise by surety; surety was, in effect, alter ego of the principal).

Whether or not this suretyship was conditional, however, we conclude that the principles of equity operate so as to bar the Bank's claim against Ohio Casualty. As we noted above, even the surety who makes an unconditional promise to pay may invoke equitable defenses. We draw upon both general suretyship doctrine and the facts of this case to reach our conclusion that Ohio Casualty is entitled to such a defense.

First, the purpose of a suretyship in commercial transactions is to protect the creditor against the possible unjustified nonpayment by the principal debtor. *Law of Suretyship* § 1.1, at 1. Once a court has held that the debtor has no debt resulting from a given transaction, *when the reason for the extinction of the claim stems from behavior of the creditor*, it would be unjust then to allow the creditor to collect from the debtor's surety. The surety presumably entered the transaction on the basis of its evaluation of the principal's ability and willingness to fulfill the obligation in the first instance. And yet, that evaluation would be meaningless if the surety's obligation were not at least dependent upon the creditor fulfilling its end of the bargain in good faith. When the creditor has defaulted in some manner, it makes sense to impose on the creditor the cost of an error in business judgment, rather than to add to the surety's risks the burden of a deficient performance by the creditor. *See Warner v. Caldwell*, 354 So.2d 91, 96 (Fla.1977) (notwithstanding fact that contract said guaranty was unconditional, "the law imposes on the creditor an obligation not to deal with the debtor, or any security for the debt, in such a manner as to harm the interest of the guarantors"); *New York*

*Indemnity Co. v. Hurst,* 252 Ky. 59, 66 S.W.2d 8, 15 (1933); *Simpson* 3.

The logic is significantly different when the principal's nonperformance is based on a personal defense; in such a case, the creditor has done all that it agreed to do, the principal's nonperformance is due to no fault of the creditor, and the risk is more appropriately allocated to the surety, who had agreed to back up the obligation of the nonperforming debtor. *Simpson* 328.

We therefore hold that even if Ohio Casualty's surety obligation was unconditional, it is entitled to assert as a release from its obligation the Michigan judgment in favor of its principal, Franklin America, which was predicated on Cast's breach of contract in the transaction that Ohio Casualty secured. This conclusion, however, does not end the case. Although the Michigan judgment unquestionably is conclusive as to Cast, the original creditor and a party in the prior case,[10] we must consider whether the prior judgment may be used against the Bank, Cast's assignee.

## B. *Assignment*

■ Ohio Casualty offers two different arguments as to the effect of assignment on the transaction here. First, it claims that the bonds could not be assigned to the Bank at all, and so the Bank has no right to collect on them. The second argument is that, as Cast's assignee, the Bank is subject to the doctrine of *res judicata* as it relates to the Michigan default judgment. We think the first issue is a close call, and choose not to decide it. Instead, we shall analyze the impact of the Michigan judgment on the Bank's right to collect on the bonds from the three different legal perspectives that are relevant here. First, under suretyship law, where the surety's responsibility is to secure an *obligation* of the principal, the extinction of the obligation logically should extinguish the surety's responsibility no matter who seeks to assert the claim. *See* 18 C. Wright, A.

Miller and E. Cooper, *Federal Practice and Procedure* § 4460, at 531 (1981) (in special contract relationships of guaranty and suretyship, "the power to conduct litigation that binds others must be found or denied as simply one more incident of the underlying relationships. A prior judgment, indeed, is often important as an event that affects the substantive relationships of the parties rather than as an adjudication."). Second, under contract principles, an "assignee 'stands in the shoes' of the assignor", *Williston* § 432, at 182, and "acquires a right against the obligor only to the extent that the obligor is under a duty to the assignor", *Restatement (Second) of Contracts* § 336(1) (1981). Finally, under principles of *res judicata,* a judgment against an assignor may in certain circumstances bind the assignee. 1B J. Moore, J. Lucas and T. Currier, *Moore's Federal Practice* ¶ 0.411[12] (2d ed. 1984).

■ Under whatever theory we use to analyze this case, the result is the same. As for suretyship law, little more needs to be said in light of our previous discussion on defenses. If the claim that Cast had assigned to the Bank was extinguished by the Michigan judgment, thus barring Cast from collecting on the bonds, we see no logic or justification under which the obligation would return to life when asserted by the Bank rather than Cast.

Under assignment principles, an assignee is not bound by any defense resulting from an agreement or discharge made by the assignor after the obligor has received notice of the assignment. J. Calamari and J. Perillo, *The Law of Contracts* 650 (2d ed. 1977). That doctrine is inapplicable here. Although Ohio Casualty, the obligor, had notice of the assignment before the Michigan lawsuit was even filed, the assignor, Cast, neither made an agreement nor executed a discharge to relieve Franklin America of its debt. Instead, the claim that Cast assigned to the Bank was rendered valueless involuntarily by circumstances con-

10. The fact that the Michigan judgment was in the form of a default does not matter. *Morris v. Jones,* 329 U.S. 545, 550–51, 67 S.Ct. 451, 455, 91 L.Ed. 488 (1947) ("'A judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata,* in the absence of fraud or collusion, even if obtained upon a default'"); 1B J. Moore, J. Lucas and T. Currier, *Moore's Federal Practice* ¶ 0.409[4] (2d ed. 1984). *See* Fed.R.Civ.P. 54(c).

nected "to that transaction upon which the assigned right depends for its existence", A. Corbin, *Corbin on Contracts* § 895, at 591.

> "The assignee must know at his peril the conditional character of the right that is assigned to him. As in the case of the purchase of a horse, the rule is caveat emptor, except that here the rule is used in favor of the obligor, instead of the seller, and is applied in full vigor." *Id.*

An assignor obviously can not avoid the consequences of its breach of contract by shifting its right to payment to a third party. This is the classic case in which the assignee, standing in the shoes of the assignor, is stuck holding less than what the assignor purported to convey. *See, e.g., Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret A.S.,* 598 F.2d 1264 (2d Cir.1979).

■ Finally, the principles of *res judicata* suggest the same result. A prior judgment is conclusive against a party to the action in which it was rendered, or the party's "privy", 1B *Moore's Federal Practice,* ¶ 0.411[1]. An assignee is usually considered in privity with the assignor, *id.* at ¶ 0.411[12]. There are exceptions, however, to the privity status between an assignor and assignee. For example, there is no preclusion if the assignment took place before the litigation that is now raised as conclusive of its rights; logically, the assignee should not be bound by a judgment rendered against the assignor once the assignor no longer has the incentive to defend vigorously.

While it is true that, in this case, the Michigan judgment occurred after Cast had assigned the bonds to the Bank, that fact does not help the Bank in this particular factual context. Whether a party is in privity with another depends largely on the specific circumstances at issue; privity, in fact, has been described as any "relationship that justifies binding someone not a party". *Moore's Federal Practice* ¶ 0.411[1], at 392. Here, the Bank originally was a party to the Michigan litigation.

It successfully argued for dismissal of the claims against it in the Michigan forum on the basis of 12 U.S.C. § 94, which establishes the venue for a civil action against a national bank as the district in which the bank headquarters is located. The jurisdictional dismissal occurred at the hearing on Franklin America's motion for default judgment, with counsel from the Bank in attendance. The Bank thus voluntarily spurned the opportunity to defend a suit that it knew would otherwise end with a default judgment against its assignor. Under those circumstances, notwithstanding the fact that the bank properly invoked 12 U.S.C. § 94, we are dubious that the Bank can avoid the *res judicata* effect of the earlier judgment against its assignor. *See* 1B *Moore's Federal Practice* ¶ 0.411[1] and n. 17 ("in some cases the opportunity to intervene may be enough to bind a person not a party"). It may well have been the Bank's erroneous view of the law relative to suretyship defenses that led it to seek dismissal rather than to mount a defense. But the Bank's legal error seems insufficient justification to deny Ohio Casualty the benefit of the prior litigation.

> "We have stressed that '[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and private peace,' which should be cordially regarded and enforced by the courts....' *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299 [37 S.Ct. 506, 507, 61 L.Ed. 1148] (1917)." *Federated Department Stores v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981).

In light of the facts here, we suspect that justice would be served by giving effect to the doctrine of *res judicata* on behalf of Ohio Casualty.[11] In any case, under the laws of suretyship and assignment, the Bank is subject to Ohio Casualty's defense based on the Michigan judgment.

In conclusion, we reverse the judgment of the district court for the following reasons: first, whether Ohio Casualty served

---

11. The Bank in its brief barely recognizes the *res judicata* issue, asserting only that under *Re-*

*statement (Second) of Judgments* § 55 and *Restatement of Judgments* § 89, the Bank would

in the role of a surety as primary obligor or guarantor, it was entitled to raise the Michigan default judgment to avoid the Bank's claim; second, that prior judgment effectively extinguished Ohio Casualty's obligations under the bond at issue; and, finally, the principles of suretyship and assignment law, and perhaps *res judicata* as well, operate so as to make Ohio Casualty's defense applicable to the Bank, as Cast's assignee.

*Reversed.*

"in no event" be bound by the Michigan judgment. We disagree. We assume that the Bank was making reference to subsection (2) of § 55, which states that "[t]he determination of issues in an action by or against either assignee or assignor is not preclusive against the other of them in a subsequent action", with exceptions not applicable here. The entire section does not apply here because we are concerned not with a question of relitigating issues in a new action, but of the preclusive effect of the entire judgment.