STIFEL ESTATE COMPANY, A CORPORATION, RESPONDENT, v. CHARLES J. CELLA, AND FRANK R. TATE, APPELLANTS.*

St. Louis Court of Appeals   Opinion filed January 11, 1927.

1.—**Guaranty—Guarantors of Rent—Counterclaims.** In an action by a lessor against defendants as guarantors of the payment of rent and certain other sums reserved in a lease of a theatre, to which action the lessee was not a party, such guarantors could not set up as a defense, to a suit for rent, which lessee failed to pay, counterclaim for damages to lessee in losing booking contract by reason of lessor's failure to keep the premises in repair.

220 Mo. App.—42.

2.—Bonds—Leases—Guarantors of Rent—Instrument Not Bond. A written obligation entitled "guaranty," whereby the signors agreed to guarantee the payment by the lessee of one year's rent of a theater, held not a bond, inasmuch as a bond, to be valid, must have two contracting parties, an obligor and an obligee, and lessee was not a party to the instrument.

3.—Same—Requirements. Any instrument in writing that legally binds a party to do a certain thing may satisfy the requirements of a bond.

4.—Same—Defined. A bond is defined as a written instrument containing a provision that a sum, affixed as a penalty, shall be binding upon the obligor and conditioned that the penalty may be avoided by the performance by the obligor of the conditions.

5.—Principal and Surety—Guarantors of Rent—Secondary Liability—Guarantors Not Sureties. Where a theater company leased a building for a five-year term under an agreement to give security for rent, a written instrument entitled "guaranty" whereby the signors agreed, for a nominal consideration, to give surety for and guarantee payment of rent of the leased building for one year, not joined in by the lessee, held a contract of guaranty, as the signers were not bound with the lessee on the contract involved in the lease, but were only secondarily liable for the performance of certain covenants.

6.—Same—Same—Same—Guarantors—Sureties—Determining   Elements. The determining element as to whether a written contract is a contract of surety or guaranty depends on whether the liability incurred is secondary, and where the liability incurred is secondary, the contract is one of guaranty though the words "surety" and "guaranty" are used interchangeably in the instrument.

7.—Guaranty—Counterclaims—Guarantors Cannot Set Up Counterclaims or Set-Offs Accruing to Principal Not Party to Action. In an action against guarantors of the payment of rent, where guarantors admitted the execution both of the lease and the contract of guaranty, they may not defend, where the principal is not a party to the action, by setting up counterclaims or set-offs accruing only to their principal against the guarantee.

8.—Same—Action Against Guarantors of Rent—Principal Not Party—Defenses Available. Guarantors sued on a contract of guaranty may avail themselves of any defenses, except set-offs and counterclaims, that could have been asserted by their principal, provided such defenses present a legal reason why the guarantee should not be allowed to recover against the principal, as the liability of the guarantor can arise only in the event that a breach of duty owed by the principal to the guarantee is shown.

9.—Same—Same—Same—Counterclaim Accruing to Principal—Not Available to Guarantors. In an action by the lessor of a theater against defendants as guarantors of the payment of rent for one year and certain other sums reserved in the lease, the defense of guarantors that through the failure of lessor to make repairs lessee was forced to cancel booking contract whereby it was damaged, held the trial court properly disallowed to defendants the counterclaim existing only in favor of the lessee, the lessee not being a party to the suit.

10.—Same—Same—Same—Leases—Covenants—Repairs—Lessor Not Bound to Repair—Defense of Failure to Repair Not Available to Lessee. In an action by the lessor of a theater building against guarantors on a contract of guaranty to pay rent for one year, guarantors could not set up the defense that the lessor had failed to make repairs, where the lessor was under no liability to make repairs, accordingly the refusal of the trial court

to permit the defendants to set up an unavailing defense was not prejudicial error.

**11.—Landlord and Tenant—Leases—Covenants—Repairs—Absent Covenant —Lessor Under no Duty to Repair.** Where a lease contained no covenant binding lessor to make repairs, lessor is under no duty to do so and, consequently, the lessee could not avoid liability for rent by reason of such alleged failure.

**12—Guaranty—Sureties and Their Discharge—Statutes—Inapplicable to Guarantors of Rent.** Guarantors who signed an instrument guaranteeing theater company's payment of rent for one year under a five-year lease **held** not discharged because lessor under notice given by guarantors had not prosecuted its action against lessee with diligence as required by sections 12687-12689, Revised Statutes 1919, as such sections have reference to sureties and their discharge and are specifically limited by their terms to sureties on bonds, bills or notes, and, consequently, cannot be broadened by judicial construction to apply to parties obligated upon a contract of guaranty, independent of and collateral to a lease.

**13.—Parties—Joinder of Defendants—Action Against Guarantors of Rents —Application to Have Lessee Made Party Defendant—Not Timely.** In an action by the lessor of a theater against persons guaranteeing the payment of one year's rent under a lease, lessee having failed to pay the rent, the denial of the application of guarantors to have the lessee made a party defendant **held** within the discretionary power of the trial court where the application was not made until the close of plaintiff's case, for the reason that such request was not timely.

---

*Corpus Juris-Cyc. References: Bonds, 9CJ, p. 7, n. 1, 5; p. 10, n. 46; Guaranty, 28CJ, p. 890, n. 45, 46; p. 891, n. 56; p. 892, n. 57, 59; p. 1013, n. 13 New; p. 1014, n. 28, 38, 42; Landlord and Tenant, 36CJ, p. 321, n. 79; p. 331, n. 18; Pleading, 31Cyc, p. 476, n. 29; p. 477, n. 53; Principal and Surety, 32Cyc, p. 20, n. 46, 49; p. 23, n. 72.

Appeal from the Circuit Court of the City of St. Louis.—Hon. George E. Mix, Judge.

AFFIRMED.

*Boyle & Priest, G. T. Priest* and *Robt. E. Moloney* for appellant.

(1)   The court erred in striking out certain parts of defendants' amended answer filed on February 18, 1925, and in refusing to permit defendants to file their second amended answer proffered on April 24, 1925 and again on April 27, 1925, at the opening of the trial of the case, and again at the close of plaintiff's evidence in chief and in refusing to permit the Imperial Theatre Company to become a party defendant to the action.   National Bank v. Maryland Casualty Co., 270 S. W. 691; Green v. Conrad, 114 Mo. 651; State ex rel. v. Hudson, 86 Mo. App. 501; State ex rel. v. Allen, 124 Mo. App. 465; Wegenka v. City of St. Joseph, 212 S. W. 71; Secs. 1158 and 1159, R. S. 1919.   (2)   The court erred in not permitting defendants to file the answer, because the answer pleaded that plaintiff company

had not prosecuted with diligence its claim for rent against the principal, the Imperial Theatre Company, as required by Secs. 12687, 12688 and 12689, Revised Statutes of the State of Missouri of 1919.

*Rassieur & Goodwin* for respondent.

(1) When a portion of a building is leased and there is no covenant binding the landlord to make repairs, the landlord is under no contract obligation to maintain or repair either the portion leased or any other portion of the premises. Kuhn v. Sol. Heavenrich Co., 115 Wisc. 447, 91 N. W. 994, 60 L. R. A. 585; Doupe v. Genin, 45 N. Y. 119; Krueger v. Farrant, 29 Minn. 285, 13 N. W. 158. (2) In a contract of lease there is no implied covenant that the premises are fit for occupancy, or for the particular use that the tenant intends to make of them. 36 C. J., Landlord and Tenant, sec. 1124, p. 321, other cases cited note 79. (3) In the absence of a covenant binding the landlord to make repairs, he is under no liability to do so. Glenn v. Hill, 210 Mo. 291; Vae v. Weld, 17 Mo. 232. (4) Even when a lease obligates the landlord to make repairs, his failure to do so is no defense to a suit for rent. This because the covenants to make repairs and to pay rent are independent. 36 C. J., p. 331; Goodfellow v. Noble, 25 Mo. 60. (5) Therefore, the facts set up in the second amended answer, charging failure to repair or maintain either the commercial building or the theatre building, do not state any defense to a suit for rent, even had Imperial Theatre Company been a party. (6) The most that can be said of the answer is that it attempts to state a cause of action in tort in favor of Imperial Theatre Company and against plaintiff for negligence in the maintenance of the commercial building. Schindler v. Standard Oil Co., 207 Mo. App. 190. Even if Imperial Theatre Company were a party it could not set up such a cause of action as a counter-claim, because it does not lie in contract, and it does not arise out of the contract or transaction sued on, nor is it connected with the subject thereof. R. S. 1919, sec. 1233. (7) Even if Imperial Theatre Company could assert such a counterclaim, defendants cannot assert it, because a guarantor cannot set up counterclaims or setoffs in favor of the principal debtor against the plaintiff as a defense when sued on a contract of guaranty. Gillespie v. Torrance, 25 N. Y. 300, 82 Am. Dec. 355. Niedelet v. Wales, 16 Mo. 214; Osborne v. Bryce, 23 Fed. 171; Newton v. Lee, 139 N. Y. 332, 34 N. E. 905; Coe v. Cassidy, 6 Daly 243; Werner v. Boochever, 162 N. Y. S. 297; Hines v. Newton, 30 Wisc. 640. (8) Under the express provisions of the Missouri statutes these defendants cannot assert a counterclaim running to Imperial Theatre Company, because it is not one "existing in favor of a defendant and against a plaintiff between whom a several judgment might be had

in the action.'' Counterclaims belonging to Imperial Theatre do not exist in favor of Cella and Tate. Nor could a judgment on such counterclaims be entered in favor of Cella and Tate. R. S. 1919, sec. 1233. (9) The contract sued on, Plaintiff's Exhibit B, is a contract of guaranty. 2 Bouvier's Law Dict. (3 Ed.), p. 1386; 4 Words & Phrases, p. 3179. (10) The contract sued on, Plaintiff's Exhibit B, is not included in sections 12687, 12688 and 12689, relating to sureties and their discharge, and a failure to comply with said sections is no defense to this suit. R. S. 1919, secs. 12687, 12688 and 12689; Bank v. Johnson, 24 Mo. App. 316; Clark v. Barrett, 19 Mo. 39; (11) There was no error in not permitting Imperial Theatre Company to be made a party. (a) Because the abstract of the record does not bring any such ruling to this court for review. (b) Because the alleged application, being made at the close of the plaintiff's case, was untimely and it was within the discretionary power of the trial court to deny it for that reason. (c) Because in an action upon an independent contract of guaranty plaintiff is not required to make the principal debtor a party. 28 C. J. 972; 28 C. J. 1012; London v. Funsch, 188 Mo. App. 14; Roark v. Acetylene Co., 188 Mo. App. 252; Warder, etc., v. Johnson, 114 Mo. App. 571; Osborne v. Lawson, 26 Mo. App. 549. (12) A contract of guaranty is separate and independent of the contract signed by the principal. Bank v. Bunch, 251 S. W. 742. (13) The contract of guaranty, Plaintiff's Exhibit B, being the separate and independent obligation of defendants, the Imperial Theatre Company not being jointly liable thereon, it would have been error to have joined Imperial Theatre Company as a party defendant. London v. Funsch, 188 Mo. App. 14. (14) National Bank of Commerce v. Maryland Casualty Co., 270 S. W. 691, and Green v. Conrad, 114 Mo. 651, are not in point. (a) Because in both of these cases the action was on a surety bond jointly signed by principal and surety, and upon which both principal and surety were jointly liable. (b) Because in both of these cases the record showed the principal's consent that surety might use principal's set-offs and counterclaims.

BENNICK, C.—This is an action against defendants as guarantors of the payment of rent and certain other sums reserved in a lease. There was a directed verdict in favor of plaintiff and against defendants in the sum of $6,548.88, and from the judgment rendered thereon defendants, after an unavailing motion for a new trial, have appealed.

Plaintiff was the owner and in possession of certain premises at the southeast corner of Tenth and Pine streets, in the city of St. Louis, Missouri, known as the Imperial Theatre and Hotel Building. This structure was built in two sections, the north section fronting on

Pine street and designed for commercial use, while the southern section, fronting on Tenth street, was constructed for a theater. The masonry of the two sections adjoined at two points, and there was an alley five feet in width between the two structures.

On March 1, 1919, plaintiff· leased the southern structure to Imperial Theatre Company, a corporation, for a term of five years, at an annual rental of $8,250, payable in monthly instalments of $687.50 each. There was a further provision that the lessee should pay one-half of any taxes that should be assessed against said premises during the period of the lease in excess of the sum of $4,500 per year. The lease recited that the premises described therein were demised to the lessee in their present condition and state, and that the lessee might make any desired alterations in said premises for its purposes for use as a theater, with lessor's consent, at its own expense, and that all regular and ordinary repairs to the premises should be made by and at the expense of the lessee.

It was further stipulated and agreed that the lessee should furnish good and sufficient surety for the payment of the rent and any other sums payable under said lease, such surety to be satisfactory to the lessee and to be given at the time of the execution of the lease for a period of one year from March 1, 1919, and from year to year thereafter.

The lessee performed its obligation to give surety for the first year of the lease by giving the guarantee of defendants, whereby they jointly and severally guaranteed the payment of the rent reserved in the lease and of any other sums payable or accruing thereunder.

On March 4, 1920, in compliance with its covenant to give surety, the lessee caused to be executed and delivered to plaintiff the following contract of defendants, which was introduced in evidence as Plaintiff's Exhibit B:

"St. Louis, Mo., March 4, 1920.
"GUARANTEE.

"Whereas, there was entered into, as of the first day of March, 1919, by and between Stifel Estate Company as lessor, and Imperial Theatre Company as lessee, a certain lease for a portion of the building situated at the southeast corner of Tenth and Pine streets, in city block No. 275, the demised portion being known as the Imperial Theatre, and

"Whereas, it is stipulated in said lease that the lessee shall furnish good and sufficient surety, satisfactory to the lessor, for the payment of all sums payable under the terms of the said lease, such surety to be given for each succeeding year during the term of the lease:

"Therefore, for and in consideration of the sum of one dollar ($1) to us in hand paid by the Stifel Estate Company, and the receipt of

which is hereby acknowledged, and in further consideration of the covenants and agreements made by said Stifel Estate Company in the above-mentioned lease, we hereby jointly and severally, guarantee the payment to said Stifel Estate Company of the rent reserved in said lease and any other sums payable thereunder or accruing thereunder during the period of one year from and after March 1, 1920.

"CHARLES J. CELLA,   (Seal)
"FRANK R. TATE.   (Seal)

"The above surety for payments under the above-mentioned lease is hereby accepted for the period of one year from and after March 1, 1920.

"STIFEL ESTATE COMPANY,
"EDWIN H. CONRADES, President."

The evidence disclosed that the lessee failed to pay the rent reserved in said lease for the months of August, 1920, to February, 1921, inclusive, and that it likewise failed to pay its proportionate share of the taxes levied against said premises for the year 1920. This action was brought to recover said sums from defendants upon their above contract denominated as Plaintiff's Exhibit B.

Defendants filed an answer setting up certain affirmative defenses. The motion of plaintiff to strike out all of such answer, with the exception of the general denial, was, however, sustained by the court. Thereafter defendants asked, and were refused, leave to file their second amended answer, admitting the execution of the lease and of Plaintiff's Exhibit B, in which for affirmative defense it was alleged that immediately upon the taking possession of the demised premises by the lessee it became the duty and obligation of plaintiff to keep said building and all parts thereof in its possession in good repair and condition, so that no damage would be caused to the theater leased by plaintiff to said lessee; that the contract referred to as Plaintiff's Exhibit B was expressly conditioned upon the faithful performance by plaintiff of the terms of its contract with the lessee; that plaintiff, unmindful of its duty and obligation aforesaid, permitted that portion of the premises over which it had absolute dominion and control, including the roof, walls, foundation, guttering, and downspouts, to deteriorate and decay; that as a consequence thereof rain and snow leaked through that portion of the building under plaintiff's control and seeped into the portion occupied by the lessee; that, by reason of the acts of plaintiff aforesaid, said theater became so weakened and damaged that it could not be used for theatrical purposes; and that by reason of the neglect of plaintiff to carry out and perform its obligations lessee was discharged of any obligation to pay the rent reserved in said lease, and the obligation of defendants was likewise discharged.

Defendants further stated that by reason of the failure of plaintiff to carry out its obligations to lessee, said lessee was forced to cancel a booking contract, whereby it was damaged in the sum of $50,000.

·It was further alleged that thereafter the lessee entered into negotiations with plaintiff with the view of having plaintiff repair the damages aforesaid in consideration of an increased rental to be paid it by the lessee; that plaintiff did not conduct said negotiations in good faith, but merely for the purpose of preventing the lessee from giving notice of termination of the lease; and that when the lessee learned of such design on the part of plaintiff, it could not thereafter declare the cancellation of the lease without admitting liability for rentals previously accrued, that, by reason of the wrongful acts and conduct of plaintiff, both lessee and defendants had been discharged of all obligation under the lease and contract of guaranty.

Finally, it was alleged that defendants, pursuant to the provisions of sections 12687, 12688 and 12689, Revised Statutes 1919, had notified plaintiff to institute an action against the lessee; that plaintiff had filed such suit but had failed to prosecute the same to judgment; and that defendants, by reason of such failure of plaintiff, were discharged from any and all liability under the terms of Plaintiff's Exhibit B.

Defendants argue that the court erred in striking out the affirmative defenses set up in their first amended answer and likewise in refusing to permit them to file their second amended answer. It is their contention that plaintiff's Exhibit B was a bond and that the obligation of defendants was that of sureties on such bond; that the answers, which they sought to file, alleged a good defense, if pleaded by the lessee in an action against it by plaintiff; and that defendants, as sureties, had the right to set up in their answer such defenses as were available to their principal. Plaintiff, to the contrary, asserts that the matters relied upon by defendants would have constituted no defense to an action for rent, even if advanced by the lessee; that Plaintiff's Exhibit B was purely a contract of guaranty; and that defendants, as guarantors, could not set up counterclaims or set-offs accruing to their principal (the lessee) against plaintiff (the guarantee) as a defense to an action on such contract of guaranty.

In determining the liability of defendants under Plaintiff's Exhibit B we are clearly of the opinion that such obligation was not a bond. We are not unmindful that any instrument in writing that legally binds a party to do a certain thing may satisfy the requirements for a bond. [9 C. J. 7.] This court has defined a bond as a written instrument containing a provision that a sum, affixed as a

penalty, shall be binding upon the obligor and conditioned that the penalty may be avoided by the performance by the obligor of certain conditions. [Pratt & Co. v. Langston Mercantile Company, 111 Mo. App. 96, 85 S. W. 134.] However, a bond to be valid must have two contracting parties, an obligor and an obligee. [9 C..J. 10.] Defendants, whose signatures alone appear on Plaintiff's Exhibit B. do not contend that they were other than sureties on the alleged bond. If there had been an obligor, it would necessarily have been the lessee, Imperial Theatre Company, but we think that no one would seriously contend that such party was in anywise bound under the terms of plaintiff's Exhibit B, from which it follows that defendants' argument that such instrument was a bond is not well taken.

The determination of whether such instrument was a contract of suretyship or of guaranty presents a somewhat more difficult question. It occurs to us, however, that defendants were not bound with the lessee on the identical contract (the lease) under which the liability of the lessee accrued, but that, to the contrary, they were bound only for the performance by the lessee of certain covenants in such lease. Defendants were not primarily liable with the lessee for the actual amount of the rentals but merely guaranteed the payment of such sums. While the two words, "surety" and "guarantee." appear to have been used somewhat interchangeably throughout, the nature of the contract cannot be determined from the use of either. As we have indicated above, the fact that the liability of defendants for payment of the rentals and other sums was secondary as to plaintiff is the determining element. [28 C. J. 891.] These observations lead us to the conclusion, therefore, that the obligation of defendants was purely that of guarantors. [Fiester v. Drozda, 171 Mo. App. 604, 154 S. W. 441; London v. Funsch, 188 Mo. App. 14, 173 S. W. 88; 28 C. J. 890; 32 Cyc. 20.]

Such being true, was the court in error in refusing leave to defendants to file their answer? This depends, of course, upon whether the defenses attempted to be set up were of such nature that defendants could assert them when sued upon their contract of guaranty. It appears that guarantors, admitting (as in the case at bar) the execution both of the lease and of the contract of guaranty, may not defend, when the principal is not a party to the action, by setting up counterclaims or set-offs accruing only to their principal against the guarantee. [Walser v. Wear, 141 Mo. 443, 465, 42 S. W. 928; McConnon & Co. v. Kennon (Mo. App.), 281 S. W. 450; 28 C. J. 1014.] Such is the rule for the reason that these matters do not go to a failure of consideration and do not destroy the contract. Furthermore, the principal, who possesses the counterclaim, has the undoubted right to elect whether it shall be asserted as such or

be made the basis for a separate action. However, even though the above is true, guarantors may yet avail themselves of any other defenses that could have been asserted by their principal, provided such defenses present a legal reason why the guarantee should not be allowed to recover against the principal. [See authorities, supra.] This right of guarantors is eminently founded on reason. If the guarantee has no cause of action against the principal, certainly there could be no obligation on the part of the guarantors to pay. In other words, the liability of guarantors can arise only in the event that a breach of duty owed by the principal to the guarantee is shown.

In substance the defenses of which defendants sought to avail themselves fall into three distinct classifications, which, for our own convenience, we shall discuss in the following order: First, a set-off or counterclaim in the sum of $50,000, existing, if at all, in favor of the lessee only; second, the discharge of both the lessee and defendants from liability by reason of plaintiff's neglect to perform its alleged obligation to keep the premises in good repair; and, third, the failure of plaintiff to prosecute its action against the lessee to final judgment.

Clearly, in the light of the authorities we have cited above, the court properly disallowed to defendants the counterclaim existing only in favor of the lessee.

As to the second defense, it appears that defendants would have had as much right to assert it as would the lessee. If defendants were liable under the contract of guaranty, it was only because the lessee had failed to pay certain rent and taxes which it justly owed. The gist of the defense was that plaintiff was not entitled to recover such sums for the reason that it had failed to maintain the premises in good repair. The trouble with this defense, however, is that, inasmuch as there was no covenant in the lease binding plaintiff to make repairs, it was under no duty to do so, and, consequently, the lessee could not avoid liability for rent by reason of such alleged failure. [Davis v. Smith, 15 Mo. 467; Niedelet v. Wales, 16 Mo. 214; Gralnick v. Magid, 292 Mo. 391, 238 S. W. 132; Banister Real Estate Co. v. Edwards (Mo. App.), 282 S. W. 138; Allen v. Zelnicker Supply Company (Mo. App.), 263 S. W. 998; Neff v. American Steel & Wire Company, 213 Mo. App. 89, 246 S. W. 607; Burnes v. Fuchs, 28 Mo. App. 279; Griffin v. Freeborn, 181 Mo. App. 203, 168 S. W. 219; 36 C. J. 321, 331.] Accordingly, the refusal of the court to permit defendants to set up an unavailing defense was not prejudicial error.

Nor was the third alleged defense to the effect that defendants were discharged because plaintiff had not prosecuted its action against the lessee with diligence, as required by sections 12687-12689,

Revised Statutes 1919, available to defendants.  Such sections, having reference to sureties and their discharge, are specifically limited by their terms to sureties on bonds, bills or notes, and, consequently, cannot be broadened by judicial construction to apply to parties obligated, as were defendants, upon a contract of guaranty, independent of and collateral to a lease.

Lastly it is assigned that the court erred in refusing to permit the lessee, Imperial Theatre Company, to become a party defendant to this action.  In the consideration of this question we are faced at the outset with a dispute between the parties regarding the time when such application was made.  Turning to the abstract of the record, therefore, to ascertain for ourselves exactly what occurred, we observe that before the taking of testimony began, counsel for defendants, in a general statement as to his reasons for desiring to file an answer, advised the court that the Imperial Theatre Company was not a party defendant to the action, although it had made such application in the assignment division of the circuit court and had been denied leave to intervene.  Thereupon counsel asked permission to file the answer for defendants (Cella and Tate), which request was denied, the court stating that such request might be renewed at the close of plaintiff's case, to which ruling of the court, denying them leave to file their answer, defendants duly excepted.  After plaintiff had rested, counsel for defendants for the first time in the trial division asked leave for Imperial Theatre Company to become a party defendant, which request was denied and exception thereto duly saved, so that the court's refusal to permit the lessee to intervene first became a matter of exception, subject to review on appeal, upon the ruling of the court, denying such application, made at the close of the plaintiff's case.

In determining whether the court committed error in refusing to permit the lessee to be made a party defendant and adopt the second amended answer sought to be filed by defendants, we find considerable contrariety of opinion in the reported cases.  Certain well-reasoned decisions, apparently having regard, however, only for the common law, hold that, inasmuch as the guarantor's undertaking is a separate and independent contract and not a joint engagement with the principal, a joint action against both principal and guarantors cannot be maintained.  [Graham v. Ringo, 67 Mo. 324; Parmerlee v. Williams, 71 Mo. 410; London v. Funsch, supra.]  Other cases, in the light of section 1160, Revised Statutes 1919, hold that such joint action may be maintained by reason of the fact that plaintiff, having a cause of action against both principal and guarantors, is nevertheless entitled by law to but one satisfaction therefor.  [Maddox v. Duncan, 143 Mo. 613, 45 S. W. 688; Roark v. Ideal Epworth Acetylene Company, 188 Mo. App. 252, 175 S. W. 84;

Write Away Pen Company v. Buckner, 188 Mo. App. 259, 175 S. W. 81; Cockrell v. Williams, 191 Mo. App. 246, 177 S. W. 1091; Mc-Connon & Co. v. Kennon, supra.] It will be observed, however, that the statute does no more than permit a joint action to be maintained and does not make it obligatory that the principal be made a party defendant in an action against the guarantors. But be the rule as it may, we think that it was within the discretionary power of the court to refuse the application made at the close of plaintiff's case for the reason that such request was not timely. Certainly substantial justice does not require that, after a party plaintiff has made its case, the jury should be discharged and the case continued, so that a new party might become a defendant, especially when such party had been afforded full opportunity to ask leave to intervene before the assignment of the case for trial and had not seen fit to preserve the adverse ruling of the court on such application for review on appeal.

Finding no error in the trial of the case materially affecting defendants' rights, the Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.