**In re SOUTHSIDE LAWN & GARDEN/SUFFOLK YARD GUARD, A Virginia Partnership, Debtor.**

**James R. CRUMPLER, Charles L. Sims, III, Southside Lawn & Garden/Suffolk Yard Guard, Plaintiffs,**

**v.**

**The WETSEL SEED COMPANY, INC., C.R.I. Sales, Inc., Intervenor, Defendants.**

**Bankruptcy No. 89–00787–NT.**
**Adv. No. 89–1320–NT.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

May 16, 1990.

Carl E. Eason, Jr., Pretlow, Harry & Eason, Suffolk, Va., for plaintiffs.

Carolyn L. Camardo, Marcus, Santoro & Kozak, Portsmouth, Va., for defendant, Wetsel Seed Co. Inc.

Sheryl Lee Brindle, Atty. and Cooper & Davis, P.C., Portsmouth, Va., for C.R.I. Sales, Inc., Intervenor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The plaintiff filed a complaint requesting the court to quash execution obtained by defendant The Wetsel Seed Company, Inc. ("Wetsel"), against personal assets of the individual plaintiffs Crumpler and Sims. Subsequently C.R.I. Sales, Inc. ("C.R.I."), was allowed by the court to intervene. At trial the case was submitted on a full stipulation of facts and oral argument of counsel, following which the court ruled in favor of the defendant and intervenor. This opinion will supplement the court's oral findings and conclusions stated at trial.

*Facts*

Southside Lawn & Garden/Suffolk Yard Guard, a Virginia general partnership, filed a chapter 11 petition on March 3, 1989, and since then has operated as debtor in possession. The plaintiffs Crumpler and Sims are the sole general partners and full time operators of the debtor's business.

On June 2, 1988, the defendant Wetsel obtained a judgment in the City of Norfolk Circuit Court in the amount of $11,414.02 against Sims and Crumpler trading as Southside Lawn & Garden. On July 20, 1989, Wetsel had the clerk of circuit court issue a writ of execution directing a levy against any property of Crumpler and Sims pursuant to the judgment. By their complaint, the plaintiffs request this court to quash the writ of execution.

Subsequent to the filing of the complaint, C.R.I., another creditor of the plaintiffs and the debtor, was allowed to intervene in

the instant adversary proceeding. C.R.I. asks for a determination by this court that C.R.I. is not precluded from pursuing its claim against Crumpler and Sims individually.

### Discussion And Conclusions

The individual plaintiffs Crumpler and Sims seek to have the automatic stay provision of 11 U.S.C. § 362(a) extended to their benefit because of their status as general partners of the chapter 11 debtor.

The obligations owed to the defendant Wetsel and intervenor C.R.I. arose from the debtor's business, and Crumpler and Sims as general partners are personally liable for these debts. Wetsel and C.R.I. seek to subject only personal assets of Crumpler and Sims to their collection efforts. Thus the business assets of the debtor as scheduled in the chapter 11 petition are not in issue.

It is argued on behalf of the plaintiffs that under the partnership agreement and Virginia law, Crumpler and Sims are entitled to indemnification from the partnership to the extent they pay partnership debt. Consequently, it is urged that this court should invoke its equitable powers under 11 U.S.C. § 105(a) to extend the automatic stay to the partners' benefit. For this result, the plaintiffs rely upon the decision of the United States Court of Appeals for the Fourth Circuit in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

In *Robins*, the chapter 11 debtor in possession sought a preliminary injunction to restrain the prosecution of products liability actions pending in various state and federal courts throughout the United States against Robins, its insurer, Aetna Casualty and Surety Company, and certain officers and directors of Robins. The number of suits filed was approximately five thousand and the cost of defending these suits had risen into the millions of dollars. 788 F.2d at 996. The filing of Robins' bankruptcy petition had stayed all pending actions against it. However, the debtor's injunction action was brought after Piccinin

and other plaintiffs tried to sever their actions and continue against the other defendants who were not in bankruptcy. In addition to the injunction, Robins' complaint against these parties sought a declaratory judgment that the debtor's products liability insurance policy carried by Aetna was an asset of the estate which should be available to all claimants of the bankruptcy estate.

The Fourth Circuit upheld the injunction granted by the district court on four grounds:

(1) Section 362(a)(1) applied because the non-debtor co-defendants' interests were so closely intertwined with those of the debtor that the latter could be said to be the real party in interest under the "unusual circumstances" present in the case. 788 F.2d at 998–1001;

(2) Finding the insurance policy to be property of the debtor, the court applied § 362(a)(3) which stays actions against third parties as well as the debtor where the action involves custody or possession of property of the debtor. 788 F.2d at 1001–1002;

(3) The equity powers granted by § 105 of the bankruptcy code gave the district court sitting in bankruptcy authority to impose a stay. 788 F.2d at 1002–1003;

(4) The comprehensive jurisdiction authorized by 28 U.S.C. § 1334 empowered the court to impose the stay to foster efficient bankruptcy case management since clear and convincing circumstances justified the stay and outweighed the potential harm to the party against whom it operated. 788 F.2d at 1003.

In the instant case, the nondebtor individual plaintiffs ask the court to apply the holding in *Robins* to extend the automatic stay to their benefit on two grounds:

(1) Since the plaintiffs are entitled to indemnification from the debtor to the extent they must pay claims against the debtor, a judgment against them is a judgment against the debtor.

(2) Since the plaintiffs' management skills are vital to the debtor's reorganization, their being required to defend collec-

tion suits will have an adverse effect on the reorganization.

This court rejects the plaintiffs' argument. The present case does not remotely involve the type of "unusual circumstances" present in *Robins*. The only significant similarity here is that the plaintiffs will be entitled to indemnification from the debtor to the extent they are required to pay partnership debt.

Subsequent to *Robins*, the Fourth Circuit has considered a case having facts more in line with those here and held that the automatic stay should not extend to a guarantor of the debtor's liability. *See Credit Alliance Corp. v. Williams*, 851 F.2d 119 (4th Cir.1988). The court of appeals made it clear that the *Robins* holding is quite limited in its application and that the automatic stay will not ordinarily be extended to the benefit of nondebtor parties.

This court recognizes that a contrary result is suggested by *First Nat. Bank of Louisville v. Kanawha Trace Dev. Partners (In re Kanawha Trace Dev. Partners)*, 87 B.R. 892 (Bankr. E.D. Va.1988). However, this case is distinguishable since in *Kanawha Trace* the nondebtor party was an important continuing source of funds to the reorganization efforts of the debtor. Moreover, it should be noted that the *Kanawha Trace* opinion was filed on June 29, 1988, and that in *Credit Alliance* on July 5, 1988.

Based upon the rationale of *Credit Alliance*, this court finds that the automatic stay provisions of § 362 should not be extended to plaintiffs, and the court will not exercise its equitable powers under § 105 to accomplish this result.

A separate order has been entered.