**In re F.T.L., INC., Debtor.**

**F.T.L., INC., Frank Lash, Jr., and Robyn W. Lash, Plaintiffs,**

**v.**

**CRESTAR BANK, Defendant.**

No. 91–24400–T.
Adv. No. 92–02257–T.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

March 16, 1993.

Kevin R. Huennekens, Michael A. Condyles, Patricia E. Mealer, Maloney, Yeattes & Barr, Richmond, VA, for Lashes.

Stuart L. Nachman, Kalfus & Nachman, Norfolk, VA, for debtor.

Melvin R. Zimm, Glasser & Glasser, Norfolk, VA, for Crestar Bank.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This adversary proceeding[1] comes before the court on a complaint for injunctive relief filed by debtor and the principals of the debtor. Plaintiffs seek to temporarily enjoin Crestar Bank from foreclosing on the personal residence of Frank Lash, Jr., and Robyn Lash. Crestar Bank is the primary creditor of the debtor, and its lien on the residence arises from the Lashes' personal guarantee of the debtor's obligation to Crestar. A foreclosure sale had been scheduled for January 28, 1993. The court heard evidence on January 21, 1993, and ruled from the bench that unusual circumstances in this case justified an injunction for a period of 90 days. This memorandum opinion supplements the court's bench ruling.

### Findings of Fact

Debtor ("FTL") operates a car wash under the trade name Car–Robics Brushless Auto Wash in Newport News, Virginia. On July 31, 1991, debtor filed a voluntary bankruptcy petition under chapter 11. Frank Lash, Jr., and Robyn Lash ("Lashes") are officers and directors of FTL, and together they hold 60 percent of the stock in FTL. Although Frank Lash, Jr., is the president of FTL, his sons Frank Lash, III, and Tom Lash oversee the day to day operations of the business. Frank Lash, Jr., is a pharmacist, and his primary occupation is operating a small pharmacy. However, the Lashes' pharmacy is of inconsequential value, and the Lashes' primary assets are their ownership interest in FTL and their personal residence in which they have substantial equity.

Crestar Bank is the primary secured creditor of FTL, holding secured debt of approximately $785,000.00. Frank Lash, Jr., and Robyn Lash personally guaranteed this debt. In January 1992 Crestar secured a judgment lien against the Lashes and subsequently perfected its lien against the Lashes' personal residence. A foreclosure sale on the residence was scheduled for January 28, 1993. Crestar also issued suggestions in garnishment on the Lashes' personal bank accounts.

Since the commencement of this case FLT has made monthly adequate protection payments to Crestar in the approximate amount of $11,000.00. This amount represents the monthly payments of principal and interest due prepetition. The evidence indicates that FTL is currently operating at a profit and that these adequate protection payments will likely continue throughout the bankruptcy case. All the assets of FTL are fully insured as is the Lashes' residence.

FTL filed its amended plan of reorganization in December 1992. The plan calls for the Lashes to contribute all the equity in their home to the reorganization. The Lashes are prepared to accomplish this through a home equity loan, and they have already obtained a $115,000.00 written loan commitment from First Fidelity Mortgage to be secured by a second deed of trust on their residence. In addition, FTL is conceivably 30–45 days away from a commitment on a SBA loan through NationsBank. However, this loan is conditioned upon the continued ownership and management of FTL by the Lash family and the personal guarantee of the Lashes. Frank Lash, III, and Tom Lash have been able to secure new financing commitments of approximately $41,000.00, and a personal friend of the Lashes, Don Sweeney, has expressed

1. Although movants filed this adversary proceeding for injunctive relief, this matter initially came before the court on plaintiff's *motion* for preliminary injunction. This memorandum opinion is being written in the adversary proceeding because in my view this is a more appropriate procedure for seeking injunctive relief of this nature.

interest in investing up to $30,000.00 in FTL if a plan is eventually confirmed.

*Discussion and Conclusions of Law*

■ The plain language of 11 U.S.C. § 362 provides only for the automatic stay of judicial proceedings and enforcement of judgments against the debtor or the property of the estate. *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988). This court has previously held that in the absence of compelling unusual circumstances, guarantors of a debtor must file their own bankruptcy petition to receive the benefits of bankruptcy law. *See Crumpler v. Wetsel Seed Company (In re Southside Lawn & Garden)*, 115 B.R. 79, 81 (Bankr.E.D.Va.1990). Nothing in § 362 suggests Congress intended to strip from creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt.[2] *Credit Alliance Corp. v. Williams*, 851 F.2d at 121. The very purpose of a guarantee is to assure a creditor that in the event the debtor defaults, the creditor will have someone to look to for reimbursement. *Credit Alliance Corp. v. Williams*, 851 F.2d at 122 (citing *Rojas v. First Bank National Ass'n*, 613 F.Supp. 968, 971 (E.D.N.Y.1985)).

■ While the automatic stay provisions are generally said to be available only to the debtor and not to third party guarantors, the Fourth Circuit has held that in unusual circumstances the bankruptcy court can enjoin proceedings against non-debtor third parties pursuant to 11 U.S.C. § 105(a). *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002–04 (4th Cir.1986); *accord Willis v. Celotex Corp.*, 978 F.2d 146, 149–50 (4th Cir.1992); *Dalkon Shield Claimants Trust v. Reiser (In re A.H. Robins Co., Inc.)*, 972 F.2d 77, 82 (4th Cir.1992). Where the identity of the debtor and the third party are inexorably interwoven so that the debtor may be said to be the real party against whom the creditor is proceeding a bankruptcy court may exercise equitable jurisdiction to enjoin proceedings against non-debtor third parties. 11 U.S.C. § 105(a); *A.H. Robins Co. v. Piccinin*, 788 F.2d at 1004 (citations omitted). For example, a situation may exist where proceeding against the third party would actually reduce or diminish property the debtor could otherwise make available to the creditors as a whole. *A.H. Robins Co. v. Piccinin*, 788 F.2d at 1008. Allowing such action would undermine two basic principles of chapter 11: to provide creditors with a compulsory and collective forum to sort out their relative entitlement to a debtor's assets and to provide the debtor with a realistic opportunity to formulate a plan of reorganization. *See A.H. Robins Co. v. Piccinin*, 788 F.2d at 998; *see also* Thomas H. Jackson, The Logic and Limits of Bankruptcy 4 (1986).

■ However, before the court can grant injunctive relief the court must find:

1. The plaintiff is likely to succeed on the merits;

2. The plaintiff has shown that irreparable injury will result without such relief;

3. Issuing the injunction would not substantially harm other interested parties; and

4. The public interest is best served by preserving the status quo until the merits of the controversy can be fully considered.

*See Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 193 (4th Cir.1977).

■ I believe this four-part test is satisfied and that this case presents the kind of "unusual circumstances" set forth in *Robins* that warrant a *temporary* injunction against Crestar to cease collection activities against the Lashes. *A.H. Robins Co. v. Piccinin*, 788 F.2d at 999.

First, the evidence establishes that the collection activities against the Lashes

**2.** Congress knew how to extend the automatic stay to nonbankrupt parties when it intended to do so. Chapter 13, for example, contains a narrowly drawn provision to stay proceedings against a limited category of individual cosigners of consumer debts. *See* 11 U.S.C. § 1301(a); *Credit Alliance Corp. v. Williams*, 851 F.2d at 121.

**64**

arise from FTL debt to Crestar, not direct personal obligations of the Lashes to Crestar. The evidence also establishes that FTL is currently operating at a profit with several promising avenues of new financing on the horizon. With a brief "respite from protracted litigation" the Lash family may be able to successfully reorganize this debtor. *A.H. Robins Co. v. Piccinin,* 788 F.2d at 998. Accordingly, the court believes the debtor is "likely to succeed on the merits" by proposing a confirmable chapter 11 plan.

Second, the facts establish that proposing a confirmable plan will be virtually impossible without the active involvement of Frank Lash, Jr., in pursuing new financing arrangements. If Frank Lash, Jr., filed his own bankruptcy petition he probably would not be able to contribute the equity in his residence to the debtor's plan of reorganization as proposed, and his ability to secure new financing for the debtor would be foiled. Accordingly, the court must conclude that "irreparable harm will occur" to the debtor's realistic opportunity to reorganize if collection activities against the Lashes are allowed to continue.

Third, the evidence establishes that little or no harm will be caused to Crestar if it is *temporarily* enjoined from collection activities against the Lashes.[3] What Crestar seeks through foreclosure on the Lashes' residence is effectively being proposed under the plan of reorganization by the Lashes contributing all the equity in their home to the plan; as the primary secured creditor Crestar will be the beneficiary of these funds. The Lashes are not holding back any substantial asset that would otherwise be available to Crestar via the Lashes' guarantor liability. Moreover, since the commencement of this case Crestar has received and will continue to re-

ceive monthly adequate protection payments equivalent to the monthly payments of principal and interest due prepetition. Given its predominant secured creditor position it is unlikely that a plan can be confirmed over Crestar's objection. Accordingly, the court must find that issuing a temporary injunction "will not substantially harm" Crestar or any other interested party.

Fourth, the court believes the creditors as a whole are best served by giving this debtor an opportunity to propose a plan of reorganization. By seeking to foreclose on the Lashes' residence Crestar is attempting to opt-out of chapter 11's compulsory and collective forum of sorting out the creditors' relative entitlement to the debtor's assets. The creditors as a whole deserve the opportunity to evaluate and vote on a plan of reorganization in this case. Accordingly, the court concludes that the "public interest is best served by maintaining the status quo" and enjoining Crestar's collection activities against the Lashes for a period of 90 days or until the merits of the debtor's plan can be promptly and fully considered at a confirmation hearing.

Accordingly, the court will enjoin Crestar's collection activities against the Lashes for a period of 90 days.

A separate order has already been entered.

---

**3.** This injunction is *temporary* only, and issued to assist the debtor through a crucial point in the reorganization proceedings; the injunction will expire in 90 days or upon confirmation of a plan. The need for permanent injunctive relief in this case is remote because any confirmed plan would likely render unavailable the Lashes' main asset, the equity in their home. Moreover, this court is disinclined to permanently enjoin collection activities against a non-debtor be-

cause 11 U.S.C. § 524(e) arguably prevents what would in effect be granting a discharge to a non-debtor. *See* Peter M. Boyle, *Non–Debtor Liability in Chapter 11: Validity of Third–Party Discharge in Bankruptcy,* 61 Fordham L. Review 421, 447 (1992). This type of extraordinary relief may be appropriate in rare circumstances like *A.H. Robins* but should not be liberally granted.