LIBERTY MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

GREENWICH INSURANCE
COMPANY, Defendant.

No. CIV.A.2002–10160RBC.[1]

United States District Court,
D. Massachusetts.

Oct. 6, 2003.

Gregg D. Shapiro, Choate, Hall & Stewart, Kara M. Zaleskas, Choate, Hall & Stewart, Douglas R. Gooding, Choate, Hall & Stewart, Boston, MA, for Liberty Mutual Insurance Company, Counter Defendant.

Douglas W. Salvesen, Yurko & Salvesen, P.C., Boston, MA, Lawrence R. Moelmann, Hinshaw & Culbertson, Chicago, IL, for Greenwich Insurance Company, Defendant.

### FURTHER MEMORANDUM AND ORDER ON LIBERTY'S MOTION FOR SUMMARY JUDGMENT (# 21)

COLLINGS, United States Magistrate Judge.

### I. Introduction

In this action Liberty Mutual Insurance Company ("Liberty") is seeking payment on a certain surety bond that Greenwich Insurance Company ("Greenwich") issued on behalf of American Tissue, Inc. ("American Tissue"), its principal, for the benefit of the plaintiff. Liberty provided workers' compensation insurance coverage for American Tissue. The surety bond ("the Bond") was obtained from Greenwich to secure American Tissue's performance of its obligations pursuant to an Agreement

---

1. With the parties' consent, on June 6, 2002 this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgement, pursuant to 28 U.S.C. § 636(c).

For Guarantee of Deductible Reimbursement ("the Agreement") with Liberty.

American Tissue suffered financial difficulties which ultimately led to the company filing for bankruptcy in September, 2001. Approximately one month later Liberty submitted a claim to Greenwich for the full penal sum of the Bond consequent to the failure of American Tissue to met its obligations under the Agreement. This litigation ensued when Greenwich refused to honor Liberty's claim.

## II. Procedural Background

On March 3, 2003, I issued a Memorandum and Order on Liberty's Motion For Summary Judgment (# 59), the text of which is incorporated herein by reference. At the conclusion of that Memorandum and Order, I pretermitted decision on the dispositive motion and allowed discovery to be taken on a single discrete issue. When that discovery was completed, the parties submitted further memoranda on the summary judgment motion.

The arguments advanced in the second round of briefs raised additional, novel issues. Consequently, on July 28, 2003, I issued a Further Memorandum and Procedural Order on Liberty's Motion For Summary Judgment (# 79) raising several questions to be addressed by counsel at a hearing set for August 11, 2003. The hearing took place as scheduled with the parties arguing their respective positions. At the conclusion of the hearing, plaintiff's counsel sought leave to file a further memorandum of law on the bankruptcy issue. That request was granted and on August 22, 2003, Liberty filed a Supplemental Memorandum on the Enforceability of the Ipso Facto Clause Against Greenwich Insurance Company (# 80). Three weeks later on September 12th the defendant submitted Greenwich's Response to Liberty's Supplemental Memorandum on the Enforceability of the Ipso Facto Clause

Against Greenwich (# 81). Following oral argument and the submission of these final briefs, the motion for summary judgment stands ready for final resolution.

## III. Discussion

On September 10, 2001, American Tissue filed a voluntary petition for bankruptcy protection. (Declaration of Kevin Reid # 24 ¶ 18 and Exh. 13) The terms of the Agreement between American Tissue and Liberty provided, inter alia, as follows:

11. **Defaults.** Any of the following events shall be an "Event of Default":

\* \* \* \* \* \*

(c) The insolvency of the Policyholder, commencement by Policyholder of corporate or other liquidation or dissolution proceedings, failure by Policyholder to pay debts generally as they become due, general assignment by the Policyholder for the benefit of creditors, or the filing by or against Policyholder of any petition, proceeding, case or action under the provisions of the United States Bankruptcy Code or other law for the relief of or relating to debtors.

\* \* \* \* \* \*

12. **Remedies.**

\* \* \* \* \* \*

(c) If any Event of Default, as described in ¶ 11(b) through 11(j) has occurred, Liberty Mutual may do one or more of the following, in such order as Liberty Mutual shall determine in its sole and absolute discretion:

\* \* \* \* \* \*

(iv) submit a claim upon the Surety Bond for the full penal sum of the bond and

draw upon the full amount of the Letter of Credit.

Agreement ¶ 11(c)and ¶ 12(c)(iv).

Relying on those terms in the Agreement, on October 9, 2001, Liberty sent a certified letter to the Surety Claim Department at Greenwich, the text of which read:

### "STATEMENT"

In accordance with the terms of the Greenwich Insurance Company bond to Secure Deductible Reimbursement Agreements—Bond N. 45017865 dated January 24, 2001, we hereby notify you, as stated in the Agreement For Guarantee of Deductible Reimbursement # 6577–R, of an "Event of Default" as described in Item # 11(c) of that agreement, American Tissue has filed a Petition for Bankruptcy, Bankruptcy Court, District of Delaware, Petition No. 01–10412. Under the relevant security agreement Item # 12(c)(iv), Liberty Mutual is entitled under these circumstances to the remedy of submitting a claim upon the Surety Bond for the full penal sum of the bond.

The undersigned obligee therefore presents this claim for the full penal sum of $3,700,000.00 on Bond No. 45017865 and requests payment of the claim within thirty (30) days of receipt of this statement.

Declaration # 24 ¶ 20 and Exh. 14.

Greenwich has failed and refused to pay Liberty the full penal sum of the Bond. (# 24 ¶ 21)

It was asserted in the plaintiff's original summary judgment papers that the bankruptcy filing by American Tissue constituted a default under the Agreement that entitled Liberty to submit a claim to Greenwich for the full amount of the Bond. (# 22 at 8; # 35 at 5; # 47 at 9–10) This was but one of a myriad of arguments advanced by the plaintiff in seeking the entry of judgment as a matter of law. Greenwich responded in kind, raising a panoply of reasons why summary judgment should not be granted.

In the initial Memorandum and Order (# 59), I noted that not all of Greenwich's grounds for disputing Liberty's claim needed to be addressed since I viewed one as ultimately dispositive. I then dropped a footnote, writing as follows:

Certain of the defendant's arguments have merit. For example, the Court agrees with Greenwich's contention that ¶ 11(c) of the Agreement is an "ipso facto" clause under 11 U.S.C. § 365(e)(1) and, as such, is prohibited. See, e.g., In re Manufacturing Technologies, Inc., Adversary Proceeding No. 00–1297, slip op. # 15 (August 16, 2000) and slip op. # 29 (D.Mass., October 31, 2000).

Memorandum and Order # 59 at 12 n. 19.

Liberty contends that this ruling was erroneous and so moves for reconsideration.

The plaintiff's primary point is that the provisions of the Bankruptcy Code are intended to protect debtors by

provid[ing] a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

*Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); see also *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001).

According to Liberty, since Greenwich is not a debtor, but rather a surety, the Bankruptcy Code affords it neither rights nor benefits. This is a view that several

courts have espoused. For example, in *In re F.T.L., Inc.*, 152 B.R. 61 (E.D.Va.1993), it was explained that:

> This court has previously held that in the absence of compelling unusual circumstances, guarantors of a debtor must file their own bankruptcy petition to receive the benefits of bankruptcy law. See *Crumpler v. Wetsel Seed Company (In re Southside Lawn & Garden)*, 115 B.R. 79, 81 (Bkrtcy.E.D.Va.1990). Nothing in § 362 suggests Congress intended to strip from creditors of a bankrupt debtor the protection they sought and received when they required a third party to guaranty the debt. *Credit Alliance Corp. v. Williams*, 851 F.2d at 121. The very purpose of a guarantee is to assure a creditor that in the event the debtor defaults, the creditor will have someone to look to for reimbursement. *Credit Alliance Corp. v. Williams*, 851 F.2d at 122 (citing *Rojas v. First Bank National Ass'n*, 613 F.Supp. 968, 971 (E.D.N.Y.1985)).

*In re F.T.L., Inc.*, 152 B.R. at 63 (footnote omitted); see also *In re Southside Lawn & Garden/Suffolk Yard Guard*, 115 B.R. 79, 81 (E.D.Va.1990); *Dime Savings Bank, FSB v. Greene*, 813 A.2d 893, 896 (Pa.Super. 2002).

Greenwich argues, however, that its obligations under the Bond are co-extensive with those of its principal, American Tissue. According to the defendant, since the ipso facto clause cannot be use as a trigger to alter the rights of American Tissue under the Agreement, neither can it be used against Greenwich. Certainly there is case law to support this general proposition:

> The basic rule on the liability of sureties is that "the surety is not liable to the creditor unless his principal is liable"[;] thus he may plead the defenses which are available to his principal, Williston

§ 1214, at 714; Law of Suretyship § 7.1, at 200. See *Asociacion De Azucareros De Guatemala v. United States National Bank of Oregon*, 423 F.2d 638, 641 (9th Cir.1970); *Stephens v. First Bank and Trust of Richardson*, 540 S.W.2d 572, 574 (Tex.Civ.App.—Waco 1976); *C–E Building Products, Inc. v. Seal–Rite Aluminum Products of N.H.*, 316 A.2d 198, 199, 114 N.H. 150 (1974); *The Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109, 299 P.2d 72, 76 (1956); *Krekel v. Thomasma*, 255 Mich. 283, 238 N.W. 255, 256 (1931) (the liability of guarantors "depends on the liability of their principal"); *Stifel Estate Co. v. Cella*, 220 Mo.App. 657, 291 S.W. 515, 519 (1927) ("If the guarantee has no cause of action against the principal, certainly there could be no obligation on the part of the guarantors to pay.").

*Rhode Island Hospital Trust National Bank v. Ohio Casualty Insurance Company*, 789 F.2d 74, 78–79 (1st Cir.1986); *see also John W. Egan Company, Inc. v. Major Construction Management Corporation*, 46 Mass.App.Ct. 643, 646, 709 N.E.2d 66, 69 (1999)("The obligations of the surety under a payment bond corresponds to that of the principal."); *Mestek, Inc. v. United Pacific Insurance Co.*, 40 Mass.App.Ct. 729, 732, 667 N.E.2d 292, 294 (1996).

However, as with almost every general rule, there are exceptions. Indeed, the First Circuit observed that "[f]or example, a surety may not assert personal defenses of its principal, such as insanity, infancy, or duress, and also may not claim defenses that arise by operation of law, such as the statute of limitations." Rhode Island Hospital Trust, 789 F.2d at 79 n. 6 (citations omitted). And therein lies the rub in Greenwich's argument.

■ The defense of the unenforceability of the ipso facto clause arises by operation of law, to wit, section 365(e)(1) of the

Bankruptcy Code which provides as follows:

> (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on-
>
> > (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
> >
> > (B) the commencement of a case under this title; or
> >
> > (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

Liberty argues that the protection conferred by this statute is a personal defense of American Tissue, the debtor, which cannot be interposed by a third-party such as Greenwich. See, e.g., *Arrow Plumbing and Heating, Inc. v. North American Mechanical Services Corp.*, 810 F.Supp. 369, 372 (D.R.I. 1993)("A surety generally stands in the shoes of its principal. It may avail itself of any defense which is available to its principal except those that are purely personal, such as bankruptcy or infancy."(citations omitted)) Stated in a slightly different way, an ipso facto clause is only enforceable by the debtor or a Trustee who is acting to conserve the assets of the debtor. This inability of a third-party to raise a personal defense of a debtor explains the facial conflict between the parties' positions and the cases upon which they rely, i.e., that a surety can be liable even though its principal is not.[2] Indeed, this rationale has been specifically applied in the bankruptcy context:

> Although a surety may generally raise the defenses available to its principal, this is not the case where such defenses are personal to the debtor or arise by operation of law. *Rhode Island Hospital Trust National Bank v. Ohio Casualty,* 789 F.2d at 78–79. The defenses asserted here by the surety fall into both categories. Generally, the protections encompassed in the bankruptcy laws are for the benefit of those who avail themselves of the bankruptcy court's jurisdiction by filing petitions for relief. The debtor's bankruptcy protections do not apply to the property interests of parties other than the bankruptcy debtor. See, *In re Lockard,* 884 F.2d 1171 (9th Cir.1989); *U.S. v. Huckabee Auto Co.,* 783 F.2d 1546 (11th Cir.1986); *Browning Seed, Inc. v. Bayles,* 812 F.2d 999 (5th Cir.1987). Debtor relief under bankruptcy is personal to the debtor. This is true even when the nondebtor is a surety which will be given a claim for indemnification against the estate. *In re Northeast Glass, Inc.,* 112 B.R. 475, 477 (Bkrtcy.D.Mass.1990). Consequently, the surety's obligation to pay upon the debtor's default is unaffected by the debtor's filing a petition in bankruptcy. *In re Woerner,* 19 B.R. 708, 711 (Bkrtcy. D.Kan.1982) (citing 11 U.S.C. § 524(e) which provides: "Except as provided in

---

**2.** This is also in line with the cases cited by Liberty which state, in effect, that ipso facto clauses are enforceable against non-debtors. See *Chrysler Financial Corp. v. Fruit of the Loom,* 1993 WL 19659, *2–*4 (Del.Super.1993)("Thus, it is apparent from the Bankruptcy Code, the legislative history and the case law that although ipso facto clauses are unenforceable in bankruptcy, they are enforceable outside of bankruptcy."); *In re Prime Motor Inns, Inc.,* 130 B.R. 610, 613–14 (S.D.Fla.1991); *ITT Diversified Credit Corp. v. Kimmel,* 508 F.Supp. 140, 143 (N.D.Ill.1981).

subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.")

Moreover, inasmuch as the tolling of postpetition interest and penalties on unsecured prepetition tax claims is peculiarly a creature of bankruptcy law, it may be said to arise by operation of law. Therefore, it may be concluded that the bankruptcy defenses available to the debtor for purposes of this proceeding are not available to its surety.

*In re Mike Rose Oil Co., L.P.*, 1991 WL 110209, *5 (Bkrtcy.W.D.Tenn.1991).

While it is true that in the Mike Rose Oil case there was no dispute with respect to the debtor's default, but only as to the extent of the surety's liability for that default, I see no reason why the legal analysis would not be fully applicable to the facts at hand.

Liberty further argues that the instant case can be distinguished from the case previously relied upon by the Court, In re Manufacturing Technologies, Inc., because in the latter case it was the debtor, not a third-party such as Greenwich, that objected to the enforcement of the ipso facto clause in the Bankruptcy Court. In light of the preceding discussion, the plaintiff's point is well taken.

Moreover, the cases upon which Greenwich relies can also be distinguished from the factual scenario at hand. The Bankruptcy Court in *In re Metrobility Optical Systems, Inc.* refused to enforce an ipso facto clause in a lease between the debtor and lessor of a certain property. The Court concluded, inter alia, that:

> By enjoining HECOP [the lessor] from certifying that the Debtor defaulted under terms of the Lease because the Debtor filed a voluntary petition of

bankruptcy, the Court is protecting the Bankruptcy policy of not enforcing ipso facto clauses. Further, the issuance of a preliminary injunction will not affect the integrity of Letters of Credit. The Court's determination is based on the Lease provisions and their treatment under the Bankruptcy Code, and not contract principles relating to Letters of Credit.

*In re Metrobility Optical Systems, Inc.*, 268 B.R. 326, 330 (D.N.H. 2001). This decision, too, plainly falls within the parameters of the earlier analysis.

The second case Greenwich cites is *In re Auto International Refrigeration*, 275 B.R. 789 (Bkrtcy.N.D.Tex.2002), in which the Chapter 7 Trustee in an adversary proceeding sought certain interest from a lender due to the acceleration of a loan resulting from an ipso facto clause. The Bankruptcy Court refused to enforce the clause for the benefit of the trustee, writing that:

> In the case sub judice, Plaintiff's [Trustee's] sole argument concerning whether the Loan was accelerated is that the terms of the Loan Agreement affirmatively accelerated the Loan upon the filing of bankruptcy. As section 365(e)(1) and Chateaugay demonstrate, if the only Event of Default that is deemed to have occurred is [debtor's] filing of bankruptcy, then there has been no default and the Loan Agreement was therefore not accelerated. There is a slight factual difference from Chateaugay and the majority of cases applying 365(e)(1) in that here, the lender is using it as a defense to acceleration, while typically the defense is used by the debtor to prevent the lender from accelerating. However, whether the lender or the debtor is using 365(e)(1) as a defense, the Code clearly states that ipso facto clauses are unenforceable and

thus can not be considered as an event of default. Therefore, the Loan Agreement was not accelerated upon [debtor's] filing of bankruptcy.

*In re Auto International Refrigeration,* 275 B.R. at 811.

This decision does not detract from the prior analysis. In the case, it was the Chapter 7 Trustee who sought to invoke an ipso facto clause, and he sought to do so in the Bankruptcy Court. The Court held that section 365(e)(1) prohibited the Trustee from doing so in the circumstances of that case. That the Trustee's attempted maneuver was rebuffed indeed worked to the advantage of the lender but that is a far cry from holding that the lender had the ability to invoke the section as a "defense." Indeed, the Court's characterization of the lender using section 365(e)(1) as a "defense" is, at best, a poor choice of words.

 The Court can find no case in which any person other than the debtor (or a Trustee) was able to raise section 365(e)(1) and no case in which it was permitted to be raised in any proceeding other than one in bankruptcy. Accordingly, it is my opinion that, on the basis of the plain wording of the statute and the case law, only debtors or entities empowered to act of behalf of debtors, such as Trustees, may invoke the protections of section 365(e)(1). Put another way section 365(e)(1) is enforceable only in the bankruptcy context. As is evident, the case at bar does not arise in the bankruptcy context and neither the debtor nor the debtor's representative is a named party.

Lastly, this result quite simply makes sense. The whole purpose of requiring a surety bond in this case was the precarious financial situation of American Tissue. It is incongruous to conclude that when the event occurs from which the plaintiff was attempting to shield itself, i.e., American Tissue's bankruptcy, the provider of the Bond, Greenwich, would be entitled to raise that very event as a defense to payment of the Bond outside of the bankruptcy context.[3] As a debtor, one which the Bankruptcy Code is intended to protect, American Tissue could rely on section 365(e)(1) if Liberty sought payment from that company. As a third-party, Greenwich has no basis upon which to claim protection under the provisions of the Bankruptcy Code absent filing its own petition. The defendant cannot bootstrap onto American Tissue's defense consequent to its position as a surety because a surety cannot avail itself of a defense arising by operation of law that is personal to its principal.

Having determined that Liberty's claim for the full penal amount of the Bond is valid under ¶¶ 11(c) and 12(c)(iv) of the Agreement, there is no reason to go further. The plaintiff is entitled to the entry of judgment in its favor on Count I of the amended complaint.

### IV. Conclusion

For the reasons stated, it ORDERED that Liberty's Motion For Summary Judgment (# 21) be, and the same hereby is, ALLOWED.

---

**3.** As Liberty notes, such a conclusion also flies in the face of the terms of the Bond itself, which reads, in pertinent part:

Surety's obligations hereunder shall not be affected by: . . . (c)any matter or proceeding arising in connection with any modification, limitation, discharge, assumption, or reinstatement with respect to any agreements of Obligations, or any extensions of time granted the Principal.

Bond ¶ 5(c).